COURTEEN SEED COMPANY, Appellant, Respondent, *v.* HONG KONG AND SHANGHAI BANKING CORPORATION, Respondent, Appellant.

First Department, April 30, 1926.

Banks and banking — action against bank negotiating draft against letter of credit for loss on purchase of seed — defendant agreed with bank issuing credit to handle credit through its agency in Russia — action based on fact that defendant purchased draft after expiration of letter of credit — draft was paid by bank issuing letter — defendant was not agent of plaintiff and did not owe it duty not to purchase draft after expiration of credit — defendant is not liable on theory it misrepresented time of negotiation of draft and shipment of seed.

A banking corporation maintaining an office in Vladivostok, Russia, which agreed with an American bank issuing a letter of credit in behalf of plaintiff, to handle the transaction through its Russian agency, is not liable to the plaintiff for loss on seed purchased by the plaintiff against the letter of credit on the ground that the defendant purchased or negotiated the drafts drawn against the letter of credit after the letter had expired, which drafts were subsequently paid by the issuing bank, for the defendant had the right to purchase the drafts even after the letter of credit had expired, and it was not in any sense the agent of the plaintiff and bound not to negotiate the drafts in violation of the letter of credit.

The plaintiff cannot recover on the ground that the defendant misrepresented that the drafts were negotiated and the shipment made prior to the expiration of the letter of credit, since the defendant was under no duty to make the statements mentioned and there is no evidence to charge it with actionable fraud.

CROSS-APPEALS by the plaintiff, Courteen Seed Company, and by the defendant, Hong Kong and Shanghai Banking Corporation, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of New York on the 23d day of March, 1925, upon a verdict rendered by direction of the court pursuant to a stipulation that the case be tried before the court without a jury and that a verdict be directed with the same force and effect as though a jury were present.

The plaintiff appeals on the ground that the damages awarded are inadequate.

The defendant also appeals from an order entered in said clerk's office, denying its motion for a new trial made upon the minutes.

*Humes, Buck & Smith* [*Charles F. Fawsett* of counsel; *A. L. Humes, M. E. Harby* and *Milward W. Martin* with him on the brief], for the plaintiff.

*Lord, Day & Lord* [*Henry deForest Baldwin* of counsel; *Franklin Grady* and *Sherman Baldwin* with him on the brief], for the defendant.

**496**  COURTEEN SEED CO. *v.* HONG KONG & SHANGHAI B. CORP.

First Department, April, 1926.  [Vol. 216

McAvoy, J.  The damages sought to be recovered from defendant here arose through the loss by plaintiff of over $380,000 in its sale of certain alfalfa seed, which it had purchased at Vladivostok in Siberian Russia for resale here to its customers.  The defendant had been requested by the Union Trust Company of Chicago to " handle " the transaction involving the issue of a letter of credit by the Union Trust Company in the seller's favor, payable at Vladivostok, against shipping documents described therein for $545,000, afterwards increased to $600,000, and defendant had undertaken the business of " valuing " the credit at its branch bank at Vladivostok.  The letter of credit had an expiry date of February 1, 1920.  The requirement was that " shipments must be completed and drafts, drawn on or before February 1st, 1920."  Thereafter the contract for the shipment was effected through arrangement with the Soviet authorities, who had meantime taken over this merchandise, and the seed was shipped on board the steamship *Waban* and arrived at Portland, Ore., on February 29, 1920.  Although the seed was to have been delivered at Seattle, no objection to this lack of conformity to the terms of credit is made on that account.  Nor is any assertion made that shipment in one consignment rather than in two, as provided in the letter of credit, was a breach of condition upon which plaintiff could claim damages because of its subsequent loss of profit.

The plaintiff's action is grounded upon two alleged causes.  It asserts primarily that defendant's arrangement with the Union Trust Company, whereby it agreed to negotiate drafts presented to it at its branch bank at Vladivostok, or in bankers' terms, " handle the credit," obliged it to refuse payment of the draft which was negotiated in this transaction for the purchase of the goods for $600,000, because the draft was presented after the expiry date of the letter of credit and plaintiff was thereby relieved of its obligations under the contract to take the seed, plaintiff assuming upon this theory that the terms of the letter of credit were part of its contract with the seller of the seed.

*Secondly,* it is claimed that the defendant's agent at Vladivostok fraudulently represented to plaintiff that the draft was negotiated by the seller on or before February first, and thus induced plaintiff to accept seed which it did not want and would not have paid for if it had been correctly informed by defendant's agent of the fact of payment of the draft subsequent to the date of expiration of the letter of credit.

Defendant bought the draft and sent it to the Union Trust Company for payment.  The Union Trust Company paid the defendant, and plaintiff paid the Union Trust Company.  On a

sale of the seed there was the loss mentioned, which plaintiff asserts was proximately caused through defendant's breach of duty in paying the draft after the letter's expiry date and in misinforming plaintiff by cables with respect to the shipment of the seed and payment of the draft, whereby it was misled into accepting the seed instead of rejecting for the breach of the seller.

Obviously if there was no duty arising out of contract between plaintiff and defendant, there was no liability to plaintiff for negotiating the draft after the date of the letter's expiry; and if the defendant bank, in negotiating the draft for $600,000, acted solely for itself and at its own risk, and if it did not do so in the fulfillment of any contract which it had entered into with the Union Trust Company or the plaintiff, or pursuant to any duty which it owed to the Union Trust Company or to the plaintiff, it was not acting as an agent of plaintiff or of the Union Trust Company so far as concerns the negotiation of the drafts.

The words of defendant in complying with the request of the plaintiff's banker constitute its acceptance of the business of negotiation of drafts drawn against the Union Trust Company's letter of credit. The word "handle" is the term used in the trust company's original telegram of November seventeenth, when the desire was expressed that a credit be opened with the Banque Russo-Asiatique at Vladivostok. The telegram of the Union Trust Company reads in this aspect as follows: "Heiman particularly requested credit opened at Banque Russo-Asiatic Branch in Vladivostok. Are you prepared to handle this transaction for us?"

The telegram of the trust company was an inquiry of the defendant, which had an agency in Vladivostok, if it would transmit the credit to this bank. The transaction requested to be carried out was the opening of the credit at a bank other than the defendant. Defendant's New York agent replied to the trust company's telegram: "Replying your telegram cannot handle the credit through the Banque Russo-Asiatique but will be very glad to do so through our office at Vladivostok." The defendant meant by this that it would "handle" this transaction as requested, but that it would transmit the credit to its own agency in Vladivostok instead of to the Banque Russo-Asiatique. No more was undertaken by the bank as regards negotiations of drafts under the credit than would have been undertaken if the credit had been transmitted to the Banque Russo-Asiatique.

We think there was error in the decision of the learned justice at Trial Term in his conclusions that the defendant's representative in New York contracted with the seed company through the Union

32

**498** Courteen Seed Co. *v.* Hong Kong & Shanghai B. Corp.

First Department, April, 1926. [Vol. 216

Trust Company to negotiate Adolph Heiman's drafts at Vladivostok, and that thus the defendant became the agent of the seed company, with the usual obligations of such an agency to its principal.

The postulates of the defendant are: That the defendant did not contract in New York with the Union Trust Company, the expected drawee, to purchase Adolph Heiman's draft if presented at its office in Vladivostok, and the purchasing of the draft was a transaction solely between the defendant and Adolph Heiman, the drawer; that the defendant was not the agent of the plaintiff when it purchased the draft at Vladivostok, under conditions which did not conform with the terms of the letter of credit, and, therefore, did not violate a contract; that the defendant had with the plaintiff no contract with respect to the purchase of drafts, and, therefore, the defendant owed no duty to the plaintiff with respect to such a transaction, and hence could not be liable to the plaintiff for a breach of " duty imposed upon it by law."

The basic elements which enter into the relations of the purchaser of a letter of credit, his customer, the issuing bank, and the bank at which the beneficiary negotiates his draft drawn against the letter, are given in evidence so far as custom and usage affect them, and have often been pointed out in rulings by the courts so far as the law regulates their obligations.

The governing principles in this realm of commercial credits are: The bank that issues the credit undertakes that it will pay any draft drawn and negotiated pursuant to its terms. The issuing bank then has no immediate further duty. When the draft is presented, it must then act on its promise. It thus merely sells its credit.

A credit is " opened " in a foreign city when a bank in the foreign city is advised that the bank issuing the credit will pay a draft if drawn pursuant to its terms.

Communicating a credit through a bank in this country to a bank in a foreign country authenticates it to the latter bank, but does not obligate that bank to act thereon. The bank where the credit is opened will advise the beneficiary so that it may furnish the funds when required and thus secure a commission or fee. The advising bank can, of course, if it so choose, issue to the beneficiary of the letter of credit or to some party dealing with him, its own obligation to negotiate drafts drawn under it, and it can if it choose, guarantee that the issuing bank will fulfill its obligations to pay the drafts negotiated pursuant to the terms of the credit (a confirmation); but each of these undertakings is a separate and distinct contract between the bank issuing the new commitment and the beneficiary of such new undertaking.

When a bank buys a draft relating to a letter of credit, it acts solely for itself and at its own risk; its transaction is with the drawer, not with the drawee except so far as it seeks to benefit from the drawee's commitment in its letter of credit; it owes no duty to the drawee or to the drawee's customer. It is engaged in quite a distinct kind of a transaction from selling its credits. It is buying commercial paper relying upon the credit of the drawer and any other security the drawer at the time may offer.

Upon a letter of credit being established, the negotiating bank has for its security the documents (*i. e.,* the bill of lading, insurance policies and the invoices describing the goods), the responsibility of the drawer and the guaranty of the bank which has issued the letter of credit. If the negotiating bank relies upon the letter of credit, it must see that the documents accompanying the draft and the time of its purchase correspond with the terms of the credit, otherwise the issuing bank is not liable. If the draft is negotiated under conditions which differ from the terms of the letter of credit, the negotiating bank loses the security offered by the issuing bank's guaranty to pay the draft.

These principles which govern the rights, liabilities and objects of recourse under a commercial letter of credit and drafts thereon are most fully and accurately summarized, and the leading precedents sustaining them quoted or cited, in a work of which Mr. Wilbert Ward of the New York Bar is the author, entitled "American Commercial Credits."

There is no violation of a duty in " violating the terms of a letter of credit." If the terms of the letter of credit are not complied with, the letter of credit does not enter into the transaction. It provides no security to the purchaser of the draft. The proof here evidenced no duty or obligation breached which defendant owed to plaintiff, and, therefore, no cause could be founded on the act of defendant predicated upon an implication or explicit pact of agency.

As to the alleged misrepresentation and deceit upon which a liability is sought to be fastened on defendant because of misinformation contained in defendant's cables transmitted to the trust company and forwarded by that concern to plaintiff, the plaintiff could not be expected by the sender to give any greater weight to the statements made to the Union Trust Company in the two cablegrams complained of as misrepresenting the time of negotiating the draft and shipment of the seeds, than it would have given to statements from any other person with whom it was not in privity of contract which referred to the transaction in question. No duty existing, no liability can be spelled out of these circumstances.

This part of plaintiff's cause of action lies in tort in the nature of an action for fraud and deceit, and no proof of facts sufficient to sustain such a cause of action was made.

The judgment should be reversed, with costs to the defendant, appellant, and the complaint dismissed, with costs.

CLARKE, P. J., DOWLING and FINCH, JJ., concur.

Judgment reversed, with costs to the defendant, and the complaint dismissed, with costs.