BANK OF NEW YORK AND TRUST COMPANY, Appellant, *v.* ATTER-
BURY BROTHERS, INC., Respondent.

First Department, May 10, 1929.

*Karl T. Frederick* of counsel [*John Schubert* with him on the brief; *Kobbé, Thatcher, Frederick & Hoar*, attorneys], for the appellant.

*J. A. Stevenson, Jr.,* of counsel [*William W. Lancaster*, attorney], for the respondent.

PROSKAUER, J. The plaintiff appeals from an order denying its motion for summary judgment under rule 113 of the Rules of Civil Practice and section 476 of the Civil Practice Act in an action to recover reimbursement for the payment by the plaintiff of drafts drawn upon it under two letters of credit issued by it for defendant's account. The contract by which the defendant agreed to indemnify the plaintiff contained this clause: " We will assume all risk of the acts and omissions of the users of such letter of credit, who shall be considered our agents, and agree that the bank shall hold the delivery to it of the documents named therein or documents purporting on their face to be the documents named therein, as sufficient evidence of the good faith of the shippers or drawers, without the bank assuming any responsibility in regard to correctness of the shipment."

The letters of credit were in favor of a firm, Cosculluela & Brown,

of Buenos Aires. After their issuance they were modified to run in favor of Arthur James Brown, who succeeded to the business of this firm. The letter of credit of March fourth authorized Brown to draw for not exceeding $10,000 for the cost of casein at not over $190 a ton and the letter dated February ninth authorized him to draw for not exceeding $18,900 for casein at not exceeding $188 a ton. On March 29, 1926, Brown presented two drafts for $4,750 each to the British Bank of South America in Buenos Aires accompanied by documents purporting to conform with the March fourth letter of credit. On March 30, 1926, Brown presented to the British Bank of South America in Buenos Aires a draft for $18,800, with accompanying documents, purporting to conform with the February ninth letter of credit. The three drafts and the accompanying documents were mailed by the British Bank of South America to the plaintiff and were received by it on April 27, 1926. On April twenty-eighth the drafts and the attached shipping documents were concededly examined by an authorized officer of the defendant. The extent of that examination is to some degree in dispute. The significance of that dispute will hereafter be considered. Later on the same day the documents were delivered by the plaintiff to the defendant. On May first the defendant executed trust receipts for the merchandise involved in the transactions and delivered them to the plaintiff. The bills of lading purported to show shipment in the steamship *Thode Fagelund*. She arrived in New York on May eighth. On May twelfth the defendant ascertained from the steamship company that no casein was contained in the cargo of the vessel. On May thirteenth Mr. Howard, the vice-president of the defendant, learned from the steamship company that the bills of lading were forgeries. The defendant thereupon consulted counsel and on May eighteenth notified the plaintiff that " acting upon advice of counsel, we will not make payments against these drafts when due as it is our belief that the documents tendered thereunder do not comply with the terms of the Letters of Credit."

The defendant asserts three objections to the documents common to all the transactions and a fourth objection which applies only to the transactions under the March fourth letter of credit. It urges first that the drafts were drawn by and the shipping documents specified as shipper " A. James Brown," whereas the letter of credit required the drafts to be drawn by and the invoices to be issued by " Arthur James Brown." It is conceded, however, that the person signing " A. James Brown " was the identical person intended by the plaintiff and defendant. By paying upon documents signed A. James Brown the bank may have taken the

risk that it was paying some person other than the Arthur James Brown intended. If that had happened, the loss might fall on the bank. But it did not happen. In this respect the bank was safe because it discharged its obligation to pay to the identical person for whose benefit the letter of credit was issued. (*Basse* v. *Bank of Australasia*, 90 L. T. R. 618 [1904]; *Graves* v. *American Exchange Bank*, 17 N. Y. 205; *Krakauer* v. *Chapman*, 16 App. Div. 115; affd., 162 N. Y. 623.)

The second objection is that the letters of credit specified documents covering shipment of " casein," whereas the documents presented covered " unground casein." The authorities relied upon by the respondent relate entirely to situations where a specified quality of a commodity was required by the letter of credit and the shipping document named the commodity generally without limitation to the specified quality. They hold that the plaintiff here would be unable to recover if the letter of credit had specified " ground casein " and the bill of lading had covered merely casein. (*Lamborn* v. *Lake Shore Banking & Trust Co.*, 196 App. Div. 504, 506; affd., 231 N. Y. 616; *International Banking Corp.* v. *Irving National Bank*, 274 Fed. 122, 125; affd., 283 id. 103; *Bank of Italy* v. *Merchants Nat. Bank*, 236 N. Y. 106; *Moss* v. *Old Colony Trust Co.*, 246 Mass. 139; *Banco Nacional Ultramarino* v. *First Nat. Bank*, 289 Fed. 169; *Crocker First Nat. Bank* v. *DeSousa*, 27 F. [2d] 462.) They do not hold that a bank is under greater obligation than to procure bills of lading for merchandise described in such a manner as reasonably to bring it within the connotation of the description contained in the letter of credit. Some effort is made by the defendant to show a peculiar trade nomenclature by which casein is held to mean " ground casein." The affidavits fall short of showing any such general trade usage. Indeed, it appears clearly that the difference between ground and unground casein is merely what the words indicate and that unground casein may be pulverized into ground casein at a comparatively nominal cost. Nor is any attempt made to bring home to the bank knowledge or reasonable ground to know of such a usage. There is a further circumstance which is conclusive against the defendant on this point. Mr. Scanlon, an officer of the bank, swears that when Mr. Howard inspected the papers on April 28, 1926, he read aloud from the invoices and other documents the words " 50.811 kilos of unground casein in 1427 bags " and " 2836 bags of unground casein; " that after reading this aloud, Mr. Howard said: " That's the best news I've had in some time, and I'm glad that shipment is coming through." This statement is not denied by Mr. Howard. Indeed, he deposes: " Deponent admits calling at the plaintiff bank on

April 28, 1926, and examining the bills of lading to the extent of ascertaining the amount of merchandise represented by the same, but says that he made no further examination of the documents." It was impossible to examine these bills of lading for quantities of merchandise shipped without seeing the words " unground casein." The physical appearance of the bills of lading and Howard's failure to deny conclusively show the correctness of Mr. Scanlon's affidavit. An estoppel is thus established.

The next objection is that there was not attached to the draft, as required by the letter of credit, a certificate that " the necessary documents have been sent direct to the Bank of New York & Trust Company as stipulated in this credit." There was no such certificate; but there was something which rendered its absence utterly nugatory. All the documents called for by the letters of credit were physically attached to the drafts. The letters of credit required that two bills of lading together with an abstract of invoice had to be forwarded to the plaintiff " so as to reach them not later than the vessel bringing the goods." The drafts had to be accompanied by one bill of lading together with the other papers and there was to accompany the draft a certificate that the necessary documents, that is, the additional bill of lading and other papers not physically attached to the draft, had been sent to the Bank of New York and Trust Company. The purpose of this clause could be nothing other than as sworn to by an officer of the bank. If the vessel carrying the shipment sailed before the draft had been negotiated, the shipment would arrive before the documents, and the consignee could not get delivery unless the documents were sent on the same vessel. In such case it was required that the two bills of lading must be forwarded to reach the Bank of New York and Trust Company not later than the vessel bringing the goods. The two bills of lading would not then be attached to the draft and it was, therefore, required that in such event the certificate be attached to the draft. But there could not be the slightest point in requiring a certificate that all the documents had been sent when in fact they were physically attached to the draft. Indeed, Mr. Howard's affidavit on behalf of the defendant says the purpose of having a certificate of documents accompanying the drafts is to show what disposition has been made of all the various sets of documents. That disposition was here shown by the actual presence of the required documents.

A further and more difficult question is raised with respect to the two drafts drawn under the March fourth letter. It was required by the letter of credit that the bill of lading should be an " on board " bill and not a " received for shipment " bill.

The bill of lading accompanying the $18,800 draft was concededly an on board bill. The bill of lading accompanying the two drafts for $4,750 each was also an on board bill, unless its character as such was destroyed by the fortuitous circumstance that in filling it out the forger erroneously dated it " 29th April " instead of " 29th March." It recites: " Shipped in apparent good order and condition by A. James Brown in the steamship Thòde Fagelund." It contains a number of clauses reciting the extent and limitations of the " ship's " liability. Typical of these is the clause, " The ship to be responsible only for number of packages  *   *   * shipped under this bill of lading." If the error in date had not occurred, it would necessarily be an on board bill reciting that the merchandise had been shipped and was actually received " *in* " the steamship. If this document had not been forged, it would clearly have been treated as an on board bill. Liability could not have been avoided by reason of the mistake in date. The bill would have been held to " speak as of the time of its execution and delivery." ( *Kincaid* v. *Archibald,* 10 Hun, 9.) As was stated by SELDEN, J., in *Draper* v. *Snow* (20 N. Y. 331): " The time when a contract is executed is no more a part of the contract than the place where it is executed." And KENT, Ch. J., said in *Jackson* v. *Schoonmaker* (2 Johns. 230): " The date is no part of the substance of a deed, and not necessary to be inserted. The real date of a deed is the time of its delivery." The Court of Appeals has followed this doctrine in the opinion of ANDREWS, J., in affirming *Kincaid* v. *Archibald* (73 N. Y. 189): " The date, when expressed, is not considered a part of the instrument so as to exclude proof of the actual time of execution."

This bill of lading reached New York prior to the date which it bore in Buenos Aires. It was accompanied by invoices and other documents which clearly showed the date of the transaction to be March thirtieth. The bank was justified to this extent in reading the documents together. (*Laudisi* v. *American Exch. Nat. Bank,* 239 N. Y. 234.) The provisions in American bills of lading statutes tending to make the date an element of the document could have no application to an Argentine bill. (*Archibald & Lewis Co.* v. *Banque Internationale de Commerce,* 216 App. Div. 322; 327; *Baker Co.* v. *Brown,* 214 Mass. 196.) The inconsequentiality of this objection as to misdating, as well as of the other objections is additionally demonstrated by the conduct of the defendant in executing and delivering trust receipts for the documents and retaining them without protest for two weeks. Indeed, the documents were in the defendant's possession for three days before it executed the trust receipts.

In considering all these objections it must be borne in mind that the real cause of the loss here was the forgery. That risk of loss was specifically imposed on the defendant. It received the documents and retained them for nearly two weeks without objection. The objections now raised would never have been heard of if a loss had not been occasioned by the forgery, wholly unconnected with the objections made. Every objection raised is an afterthought based upon a search to discover any kind of flaw. The flaws discovered are not only trivial in themselves, but have not the slightest causal relationship to the damage. It would run counter to justice and to commercial usage to magnify them into defenses against the assertion of liability for a loss through forgery which the agreement placed on the buyer.

We hold that no material issue of fact is raised by the defendant's affidavits.

For these reasons the order appealed from should be reversed, with ten dollars costs and disbursements, and the motion for summary judgment granted, with ten dollars costs.

Dowling, P. J., Merrell, Martin and O'Malley, JJ., concur.

Order reversed, with ten dollars costs and disbursements, and motion granted, with ten dollars costs.