**DULIEN STEEL PRODUCTS, INC., OF WASHINGTON, Plaintiff,**

v.

**BANKERS TRUST COMPANY, Defendant.**

United States District Court
S. D. New York.
Dec. 19, 1960.

Weil, Gotshal & Manges, New York City, for plaintiff. Ira M. Millstein, New York City, Michael A. Schuchat, Washington, D. C., Marshall C. Berger, New York City, Geiger, Harmel & Schuchat, Washington, D. C., of counsel.

White & Case, New York City, for defendant. Orison S. Marden, Macdonald Flinn, George P. Vlassis, New York City, of counsel.

FREDERICK van PELT BRYAN, District Judge.

This action concerns a letter of credit in the sum of $60,500 in favor of one Richard Sica which was opened for the account of plaintiff Dulien Steel Products, Inc. by Seattle-First National Bank and confirmed by defendant Bankers Trust Company. Bankers paid the face amount of the letter to the beneficiary Sica. Dulien seeks to recover from Bankers the amount so paid.

The complaint alleges two claims. The first is on the theory that Bankers, having repeatedly requested instructions as to payment, and being advised of amendments to the credit, paid Sica in disregard of instructions not to pay and in direct violation of the amendments. The second and alternative claim is on the theory that Bankers was negligent in failing to

give notice that it would disregard instructions not to pay and in representing to Dulien and leading it to believe that it would not pay by requesting instructions which it disregarded. Dulien also alleges that Bankers is estopped by reason of such representations from asserting in bar any right or obligation which it might have had to pay Sica.

Bankers says that it paid Sica in accordance with the terms of the credit and had both the right and the obligation to do so. It denies the other material allegations of the complaint.

Dulien is a Washington corporation. Bankers was incorporated under the laws of New York. Jurisdiction is based on diversity of citizenship, 28 U.S.C. § 1332.

Dulien has moved for summary judgment pursuant to Rule 56, F.R.Civ.P., 28 U.S.C., on its first claim only. Bankers has cross-moved for summary judgment on both claims. The motions are before me on affidavits supplemented by depositions.

The essential facts about which there is no real dispute are as follows:

Some time in early 1956 Dulien entered into a contract to sell scrap steel through the Office Commun des Consommateurs de Ferraille (O. C. C. F.) the purchasing authority for the European Iron & Steel Community. Payment to Dulien in an amount in excess of $3,000,000 was to be accomplished through several letters of credit established in its favor.

An organization known as Marco Polo Group Projects, Ltd., Tangiers, was apparently entitled to a commission from Dulien for having arranged the transaction. Payment to Marco Polo was to be made through two letters of credit, only one of which is involved here.

On June 29, 1956 this letter of credit in the amount of $60,500 was opened for Dulien's account by the Seattle-First National Bank. The beneficiary was Richard Sica. Seattle Bank requested Bankers to confirm the letter. On July 10, 1956 Bankers advised the beneficiary that "We [Bankers Trust] confirm the credit * * * and thereby undertake that all drafts drawn and presented as specified in the credit will be duly honored." The letter was to expire on September 30, 1956.

The letter of credit provided that "payment in full * * * shall be made without question" prior to the expiry date upon (1) presentation of a simple receipt signed by Sica, the beneficiary, reading as follows:

"Received from the Bankers Trust Co. of New York the sum of $60,500 U. S. currency, for services rendered through the Marco Polo Group Projects, Ltd. of Tangier."

and (2) notification from the Seattle Bank that Dulien had negotiated the requisite documents for payment against letters of credit established in its favor in connection with the O. C. C. F. contract.

Bankers was not advised of the terms of the underlying transaction, what connection Marco Polo had with it, or what Sica's connection was with Marco Polo.

On September 27, 1956 Sica's attorney delivered to Bankers the signed receipt called for by the letter of credit and Sica's draft for $60,500 to hold until notified that they were to be presented. He also requested that Bankers seek advice from the Seattle Bank as to whether payment should be made, i. e., whether Dulien had negotiated the documents against the credits in its favor. In compliance with this request Bankers Trust wired the Seattle Bank on October 1, 1956 as follows:

"Refer your credit 14718 our reference 75632 simple receipt for $60,-500.00 called for in credit has been presented to us with request to notify you immediately by wire and receive your authenticated wire instructions to either honor or dishonor the presentation. Please wire may we pay against simple receipt."

On the same day the Seattle Bank replied:

" * * * Your ref. no. 75632 our credit 14718 drawing for $60,-500.00. Our answer is you may not pay. No documents have been negotiated against any of the letters of

credits established to the name of Dulien Steel Products Inc. of Washington, Seattle, Washington, which letters of credit cover contract No. 28/NAMC as issued to the name of Dulien Steel Products Inc. of Washington, Seattle, Washington by the O. C. C. F. at 36 Rue Ravenstein, Bruxelles, Belgium. We understand letter of credit 14718 will be amended showing expiry October 31, 1956."

However, prior to October 1, completely unknown to Bankers, Dulien had completed negotiations with Marco Polo looking toward, among other things, a modification of earlier understandings between them.

These negotiations culminated in a letter from Marco Polo dated August 29, 1960 agreeing to substantial amendments to the terms and conditions of the outstanding letter of credit. Under the proposed amendments the face amount was to be reduced from $60,500 to $35,500 and payment of this reduced amount was to await full payment to Dulien by O. C. C. F.

Seattle Bank received the Marco Polo letter of modification through Dulien with its approval about September 10, 1956. On September 11 Seattle Bank wrote Dulien suggesting changes in the proposed modifications which are not significant here, and also stating:

"It would be preferable to issue an entirely new letter of credit * * but if this is not possible the foregoing amendments undoubtedly would serve the same purpose. * * *

"If you approve, please sign and return the enclosed copy or advise us of any objections you may have."

Neither Dulien nor Seattle Bank advised Bankers as to these communications, nor sent copies to Bankers at this time, and Bankers was wholly unaware of them until October.

On October 2, 1956, the day after the Seattle Bank had advised Bankers that Dulien had not negotiated the documents, but that it understood that the credit in favor of Sica would be extended, it wrote Bankers at Dulien's request that the credit to Sica had been extended to October 31 and that "all other terms and conditions remain unchanged". Bankers thereupon made the corresponding change in its credit and confirmed the credit as thus extended to Sica's attorney. Thus, the original letter of credit was extended at Dulien's own request for another month without modification.[1]

Had this extension not been requested by Dulien the present controversy would never have arisen. The original letter of credit could not have been paid and Sica would not have been in a position to force payment.

On October 8, 1956 Bankers again wired Seattle Bank for advice as to whether Dulien had negotiated the documents under the O.C.C.F. credits and asked "may we pay?" The next day, October 9, the Seattle Bank replied that Dulien had negotiated the designated documents. Thus, at this point the conditions of the letter had been met and Bankers Trust was required to honor drafts of Sica against the original letter of credit as extended without modification.

In the October 9 wire, however, Seattle Bank, although it had been aware of the proposed modifications since September 10, for the first time also notified Bankers

---

1. How plaintiff committed this blunder is not altogether clear from the record. Apparently Dulien's president, who had negotiated the modifications weeks before was away from plaintiff's office when a teletype message was received from one Fabian Mayer (the prime mover in Marco Polo) to the effect that "Sica has been on my neck * * *. The credit expires September 30, 1956. * * *. And he has been pressuring me * * *

to do me a favor and [sic] the bank extend for an additional month * * *. Sica who is the payoff representative has been pressuring me * * *." A vice-president of plaintiff then authorized the extension on unchanged terms. Apparently he ignored or did not know of the modifications already agreed upon and which were awaiting action at that moment in Dulien's offices.

that "Dulien * * * has requested that payment be deferred * * * because of arrangements between them and the Marco Polo Group Projects, Ltd. * * " It listed the proposed amendments and concluded with a request that Bankers "contact" Sica for "acceptance of the proposal and amendments * * *."

In response to Bankers' advice to Sica requesting acceptance of the proposed changes Sica's attorney informed Bankers by registered mail on October 10 that Sica "has not effected any modification of the original letter of credit * * * and therefore expects payment in the amount reflected in such original letter of credit."

Bankers immediately notified Seattle Bank of Sica's position, quoting his attorney's letter in full. Its wire concluded with the word "Instruct". Upon receipt of this message Seattle informed Dulien of its contents and requested instructions as to what to "advise Bankers Trust Company". Dulien was also informed that if its instructions were "to reject the request to pay, you must supply us [Seattle Bank] with a letter of indemnity * * * [to] hold us harmless against any loss or damage whatsoever by reason of such rejection or refusal of payment." Dulien promptly agreed to the required indemnity, stated that "our obligation under this Letter of Credit lies with Marco Polo Group Projects, Ltd. and not in Richard Sica as an individual", and instructed Seattle Bank to reject payment except in accordance with the amendments.

Fortified by the indemnity Seattle Bank wired Bankers Trust on October 12 "Do not pay", quoted Dulien's letter to the effect that the obligation was to Marco Polo, not to Sica individually, and advised that instructions to Sica's attor-

ney to accept the modifications [2] would be forthcoming from Italy. No mention was made by Dulien or Seattle Bank of Dulien's agreement to indemnify Seattle nor was any offer made to indemnify Bankers if it failed to pay Sica.

On October 15, three days later,[3] Bankers replied to Seattle that Sica still refused to accept the amendments and was "urgently pressing for payment". It again asked "May we pay". Seattle Bank replied the same day: "Our position remains the same * * *." The next day Bankers Trust wired Seattle Bank:

"Your credit 14718 paid today $60,500.00 Stop Informative we quote contents letter dated October 16 received from H. G. Shields attorney for Richard Sica Quote I have been authorized by Mr. Richard Sica to demand payment now due under the above numbered confirmation and letter of credit. Mr. Sica has authorized me to insist that payment be made forthwith, and if it not be made, then I have been authorized to institute action for the collection of same against you and the Seattle-First National Bank Unquote." [4]

Dulien's first claim is, in substance, that Bankers was under a duty to withhold payment once it was advised not to pay in response to its requests for instructions, and thereafter was bound by the amendments to the letter of credit proposed by Seattle Bank.

Its second claim is based on the theory that Bankers Trust was negligent in disregarding instructions not to pay after requesting advice, and that under the circumstances Bankers was estopped from relying on any right or obligation it may have had to pay Sica by leading Dulien to believe it would not pay.

---

2. In fact Dulien was frantically attempting to reach Marco Polo and received the laconic reply from Fabian "Attempting to reach Sica". Dulien never advised Bankers as to these communications.

3. A bank holiday and weekend intervened.

4. An affidavit by the assistant manager of the Seattle Bank's Foreign Department is to the effect that before payment was made he received a telephone call from Bankers' vice president Sime, who told him that Bankers would pay Sica since all the conditions on the original credit had been met.

There is no merit to these claims and Dulien is not entitled to recover on either the facts or the law.

When a bank confirms a letter of credit the letter evidences its irrevocable obligation to honor the drafts presented by the beneficiary upon compliance with the terms of the credit. The letter is quite independent of the primary agreement between the party for whose account it is issued and the beneficiary, or of any underlying transactions. Neither the issuing nor the confirming bank has any obligation, and is not permitted, to go behind the terms of the letter and the documents which are required to be presented, and to enter controversies between the beneficiary and the party for whose account the letter was opened concerning any other agreements or transactions. O'Meara Co. v. National Park Bank, 239 N.Y. 386, 146 N.E. 636, 39 A.L.R. 747; American Steel Co. v. Irving National Bank, 2 Cir., 266 F. 41, certiorari denied 258 U.S. 617, 42 S.Ct. 271, 66 L.Ed. 712; Laudisi v. American Exchange National Bank, 239 N.Y. 234, 146 N.E. 347; Ward & Harfield, Bank Credits and Acceptances (Ronald Press), 4th ed., 1958, p. 20; Finkelstein, Legal Aspects of Commercial Letters of Credit (Col. Univ. Press), 1930, p. 175, fn. 2. If the bank "keeps within the powers conferred [by the letter of credit] it is protected in the payment of the draft." Laudisi v. American Exchange National Bank, supra, 239 N.Y. 239, 146 N.E. 348.

Moreover, once an irrevocable letter of credit has been established the consent of all parties, the party for whose account the credit was opened, the issuing bank, the confirming bank, and particularly the beneficiary, is necessary in order to modify the original terms and conditions of the credit. Lamborn v. National Park Bank, 240 N.Y. 520, 148 N.E. 664; Ward & Harfield, op. cit., p. 15. These are elementary principles of letter of credit law.

Plaintiff has shown nothing which takes this case out of the orbit of these well-settled principles or carves an exception from them.

It seems to assume that Bankers should not have paid because the terms of the letter of credit had been radically changed by the amendments proposed to Bankers through the Seattle Bank. There is no basis for this assumption. The beneficiary of the letter of credit was Richard Sica. Sica never consented to the amendments proposed by Dulien to the Seattle Bank and by Seattle Bank to Bankers, and, indeed, he expressly rejected them. The amendments could not have become valid and effective without the beneficiary's consent.

Plaintiff's theory that the amendments became effective because Sica was in fact a mere collecting agent for Marco Polo, which had agreed to the amendments, is not supported by the facts. Whether or not Sica was a principal or a collecting agent was no concern of Bankers. Sica was unqualifiedly named as the beneficiary in the letter of credit by Dulien, at whose request and for whose account it was issued. Bankers was obligated to pay the beneficiary and no one else.

Plaintiff urges that since the receipt required to be presented as a condition of payment referred to the payment to Sica as "for services rendered through the Marco Polo Projects, Ltd. of Tangier", the bank should have known that Sica was a mere collecting agent. Even assuming that this question should have been of concern to Bankers, no such conclusion can be drawn from the language of the receipt. The most reasonable interpretation of the language of the receipt, and perhaps the only one, was that it was Sica who had rendered the services through the medium of Marco Polo and was the principal in the transaction, and not the opposite.

Plaintiff argues that the exchange of wires between Bankers and the Seattle Bank during the period from October 1, 1956 to October 16, 1956, the date of payment, constituted a course of conduct on the part of Bankers which estopped it from asserting its right to pay Sica and from carrying out its obligation to do so. I fail to see any legal or

factual basis for such a claim. These wires were exchanged between Bankers and the Seattle Bank, which issued the letter of credit, and not between Bankers and Dulien, with whom Bankers had no direct dealings and to whom it owed no duty except in so far as it was obligated by contract to carry out the terms of the letter. There were no communications between Bankers and Dulien and no representations by Bankers to Dulien, notwithstanding the allegation in the complaint that Seattle was Dulien's agent. See Ward and Harfield, op. cit., pp. 75–77. Cf. Kingdom of Sweden v. New York Trust Co., 197 Misc. 431, 445, 96 N.Y.S.2d 779.

But even assuming that the communications could be considered to be communications to Dulien rather than to Seattle Bank, these wires did not constitute representations that payment would not be made on which Dulien was entitled to rely. Nor did they estop Bankers from fulfilling its obligation to honor Sica's draft against the credit. All that Bankers sought to do by these wires was to assure itself that the terms of the credit had been complied with and that it was ripe for payment, and to afford the issuing bank and its client a reasonable opportunity to have reflected in valid and effective amendments any changes in the terms of the credit which were acceptable to the beneficiary Sica. Because Bankers acted both with caution and with simple commercial courtesy is no reason for holding it liable to Dulien for making a payment which it was under legal obligation to make and had no right to withhold.

It is true that Bankers did ask Seattle Bank to "instruct", and that Seattle Bank finally wired "do not pay". However, the Seattle Bank, to whom the wires were addressed, must have been fully aware of Bankers' position in the premises, and, indeed, it was told that Sica was urgently pressing for payment. There was no reason for the Seattle Bank to assume that Bankers would not pay when Sica had rejected the amendments proposed by Dulien which Dulien had assured the

Seattle Bank would be accepted by him. See Courteen Seed Co. v. Hong Kong & Shanghai Banking Corp., 245 N.Y. 377, 381, 157 N.E. 272, 56 A.L.R. 1186.

Moreover, Dulien, upon demand of Seattle Bank, had already agreed to indemnify Seattle against loss or damage resulting from a rejection of the demand to pay. Both Seattle and Dulien were, or should have been, fully aware of the nature and extent of Bankers' obligation under the letter of credit. Yet no offer or even suggestion of indemnity was made to Bankers by anyone. Neither Seattle nor Dulien could have expected that Bankers would embroil itself in the threatened suit by Sica on a firm obligation such as this for less.

Dulien has cited no authorities to sustain any of the theories I have just discussed and I have found none. It does, however, rely on Sztejn v. Schroder Banking Corp., 177 Misc. 719, 31 N.Y.S.2d 631, in which the court sustained the complaint in an action to enjoin payment by an issuing bank of a letter of credit upon the ground that the documents presented to the bank were wholly fraudulent and part of a scheme to defraud the buyer for whose account the letter had been opened.

Dulien urges that its claim here is supported by the Sztejn case because the facts show that Bankers knew that a fraud was being perpetrated against it and paid despite such knowledge.

There is no merit to that contention. As the court pointed out in the Sztejn case (177 Misc. at page 722, 31 N.Y.S.2d at page 634), citing Bank of New York & Trust Co. v. Atterbury Bros., Inc., 226 App.Div. 117, 234 N.Y.S. 442, affirmed 253 N.Y. 569, 171 N.E. 786, and Brown v. C. Rosenstein Co., 120 Misc. 787, 200 N.Y.S. 491, affirmed 208 App.Div. 799, 203 N.Y.S. 922, the issuing bank would not be liable despite the fact that the documents were forged or fraudulent, if it had paid before receiving notice of the seller's fraud and had exercised reasonable diligence before making such payment. Here there was nothing before Bankers at the time of payment which indicated that any of the documents to be

presented were fraudulent or gave Bankers reasonable grounds to believe that any fraud had been committed. Bankers had no knowledge of the underlying transaction or of the nature of the arrangements between Sica, Marco Polo and Dulien.

As far as Bankers was concerned the only information which it had was Dulien's claim transmitted by Seattle Bank that its obligation "under the letter of credit" was to Marco Polo and not to Sica and the amendments said to have been agreed to between Marco Polo and Dulien. The statement as to Dulien's obligation under the letter of credit flew directly in the face of terms and conditions of the letter which had been issued at Dulien's own instance and of the receipt which the letter specified must be presented. The amendments were rejected by Sica. Dulien's frantic but unsuccessful efforts to have Marco Polo put pressure on Sica to accept the amendments indicate plainly that it knew Sica's consent was necessary to validate them. Bankers knew nothing of these efforts. There was no reason for Bankers to believe that any fraud had been committed which might affect its obligation to pay Sica.

Whatever loss Dulien may have suffered occurred not through any fault of Bankers but through the blunders of Dulien itself. Despite the fact that Dulien had completed its negotiations with Marco Polo for amendment of the letter, including reduction of the face amount, as early as September 10, it nevertheless, on October 1, extended the credit for an additional month with the terms and conditions unchanged. If it had not done this the letter would have expired and would not have been paid.

Having elected to extend the credit Dulien failed to furnish Bankers with any information which would justify Bankers in refusing to pay. Most of the facts on which it now relies were wholly unknown to Bankers when it made the payment. Others do not seem to have become known to Dulien until after payment was made. Still others are not clear even now, and even today plaintiff says it does not know who Sica was or what his relations with Marco Polo were.

Dulien or Seattle Bank could have furnished indemnity to Bankers to protect it against loss arising from rejection of Sica's demand to pay. This was never done or even suggested. Dulien took none of the steps necessary to protect itself and any loss which it suffered is entirely its own fault. Cf. North Woods Paper Mills v. National City Bank, Sup., 121 N.Y.S.2d 543, affirmed 283 App.Div. 731, 127 N.Y.S.2d 663. This action is a belated attempt to shift Dulien's loss to a party who has no responsibility therefor.

The facts necessary to the decision of this case are not in dispute. Indeed, the only fact which Dulien claims is in dispute concerns whether or not a last minute telephone call from Bankers to Seattle stating that it was going to pay was transmitted to Dulien by Seattle. Whether it was or not makes no difference here, though it may be said that Dulien does not deny that Seattle made a telephone call to it after the receipt of the call from Bankers on the subject matter of its call from Bankers.

Bankers also urges that in any event there was no privity between it and Dulien which would permit Dulien to recover either on contract or for negligence. See Kunglig Jarnvagsstyrelsen v. National City Bank, 2 Cir., 20 F.2d 307, certiorari denied 275 U.S. 497, 48 S.Ct. 121, 72 L.Ed. 392; Kunglig Jarnvagsstyrelsen v. Dexter & Carpenter, 280 U.S. 579, 50 S.Ct. 32, 74 L.Ed. 629; Courteen Seed Co. v. Hong Kong & Shanghai Banking Corp., 216 App.Div. 495, 215 N.Y.S. 525, affirmed 245 N.Y. 377, 157 N.E. 272, 56 A.L.R. 1186. This point may have some merit. It is, however, unnecessary to discuss it in view of what has already been said.

Plaintiff's motion for summary judgment on its first claim is denied. Defendant's cross-motion for summary judgment dismissing both claims pleaded in the complaint is in all respects granted.

Judgment will be entered accordingly.

It is so ordered.