UFITEC, S. A., Respondent, *v.* TRADE BANK AND TRUST COMPANY, Appellant.

First Department, May 14, 1964.

188

*Peter Gettinger* of counsel (*Samuel W. Sherman* with him on the brief; *Edward Gettinger* and *Peter Gettinger,* attorneys), for appellant.

*Morton Moskin* of counsel (*David Hartfield, Jr.,* and *Thomas A. Butler* with him on the brief; *White & Case,* attorneys), for respondent.

BREITEL, J. P. Plaintiff, a Swiss corporation, sues to recover on a purported draft drawn against a traveler's letter of credit issued by defendant bank, situated in New York City. Special Term granted summary judgment to plaintiff and denied the bank's cross motion for summary judgment. The bank appeals.

The question involved is whether the holder of the draft complied with the conditions of the letter of credit, and if it did not, whether strict compliance was excused by the bank's alleged anticipatory breach in revoking the letter of credit before it had expired by its own terms. Because it is concluded that the holder never complied with the letter of credit and has not shown that it ever could during the term of the letter of credit, the order granting plaintiff summary judgment should be reversed, judgment in its favor vacated, and summary judgment should be granted to the bank. Moreover, on this view, it is not necessary to determine whether the letter of credit was revocable and, also, whether the bank was guilty of an anticipatory breach, by revocation or otherwise, of its engagements.

On December 27, 1961 the bank issued a traveler's letter of credit to one Edward M. Gilbert, entitling him to draw at sight up to an aggregate amount of $50,000. It was to expire December 31, 1962. It provided, in standard provisions, that

drafts had to be drawn and presented through a correspondent bank, recite that they were drawn under the identified letter of credit, signed in the presence of the bank and the signature compared with the separate identification card issued to the bank's customer in whose favor the letter was drawn. It should be noted that this was a circular letter of credit, presentable at any correspondent bank, for the accommodation of the bank's customer, and not a third-party beneficiary commercial letter of credit used in trade.

By June, 1962 Mr. Gilbert's flight to Brazil from New York City due to involvement in a stock market scandal was prominently noted in the daily press here and elsewhere. The selection of Brazil as a place of refuge was associated with the fact that no applicable extradition treaty then existed between that country and this. On June 14, 1962 the Swiss Credit Bank, on behalf of plaintiff holder, forwarded by airmail the letter of credit, which it had stamped "exhausted", the identification card, and a draft in check form dated June 14, 1962 and purportedly signed by Mr. Gilbert. The check or draft was in the amount of $50,000, the limit of the letter of credit.

A word about the draft: It was not in regular form. It was a check form for use in Mr. Gilbert's checking account. The date was typewritten. The name of the payee (not the correspondent bank, as is customary, but the plaintiff Ufitec) was handwritten as was the numerical sum of money. The lettered sum of money was printed out by a check-writing machine. Under these items, closely typed, were five lines reciting that the instrument was drawn under the identified letter of credit. These typewritten lines fill the available space about and partly around the handwritten signature of the drawer.

The items arrived at the bank in New York on June 16, 1962. Honor was refused because the draft could not have been signed in Switzerland on the stated date when Mr. Gilbert was in Brazil, and it could not have been executed in compliance with the signature and signature identification conditions of the letter of credit requiring the customer's presence in the correspondent bank at the time of signature and negotiation. The items were returned.

Plaintiff holder concedes that the tendered draft was not in compliance with the conditions, but it argues that the bank's conduct in the interim excuses it from compliance on the ground of the bank's anticipatory breach. In this respect, the holder confuses the doctrine of anticipatory breach applicable to a third-party beneficiary (seller) who is the drawer of the draft under a commercial letter of credit with that which might apply

to the customer (traveler) in whose favor a traveler's letter of credit is issued, and who is also the beneficiary and drawer of the draft. (See, e.g., Uniform Commercial Code, § 5–103, subd. [1], par. [d]; § 5–115, subd. [2], eff. Sept. 27, 1964.)

The letter of credit, it is true, contained no provision as to its revocability.* On June 15, 1962, one day after the date of the documents, purportedly executed in Switzerland, and after they had been airmailed to New York City, and one day before the documents were received in New York City, the bank cabled its correspondents in Switzerland not to negotiate drafts drawn against its letter of credit. It is this that the holder claims was an improper revocation and, therefore, an anticipatory breach of the bank's engagements. Assuming this to be so, it would be an anticipatory breach of its obligations only to Mr. Gilbert (who is the beneficiary) and an actual breach (improper dishonor) only to one who had negotiated Mr. Gilbert's draft in full compliance with the conditions of the letter of credit, prior to notice of revocation (see Ward and Harfield, Bank Credits and Acceptances [4th ed., 1958], pp. 81–83; Uniform Commercial Code, § 5–103, subd. [1], par. [d]; § 5–115, subd. [2]; § 5–116, subd. [1]; see, also, *Courteen Seed Co.* v. *Hong Kong & Shanghai Banking Corp.*, 216 App. Div. 495, 498–499, affd. 245 N. Y. 377). The holder does not so qualify, concededly.

But assuming, still further, that the holder of an irregular draft, received prior to notice of revocation, is entitled to an opportunity to cure the irregularity, the holder never cured the irregularity. Moreover, it has not been shown that it was ever in a position, before the expiration date of the letter of credit, to cure the irregularity. Mr. Gilbert remained in Brazil and he never executed a proper draft for the holder. An anticipatory breach, in a proper case, may excuse one from performing a useless act, but it does not excuse one from the obligation of proving readiness, willingness, and ability to have performed the conditions precedent. Nor should one confuse an anticipatory breach by repudiation with an act by the promisor which makes impossible, by frustration, any effort to perform a condition precedent. (*Cohen* v. *Kranz*, 12 N Y

---

* While it is not necessary to decide whether the letter of credit was revocable, it is difficult to discern what function would be served by a revocable traveler's letter of credit. As to commercial letters, see Uniform Customs and Practice for Commercial Documentary Credits, art. 2; *Foglino & Co.* v. *Webster* (*Appeal No. 1*) (217 App. Div. 282, mod. 244 N. Y. 516); U. L. A., Uniform Commercial Code (§ 5–103, subd. [1], par. [a], esp. Comment 1).

2d 242, 247; *De Forest Radio Tel. & Tel. Co.* v. *Triangle Radio Supply Co.*, 243 N. Y. 283, 293; *Scholle* v. *Cuban-Venezuelan Oil Voting Trust*, 285 F. 2d 318, 320 [2d Cir.]; *United States Overseas Airlines* v. *Compania Aerea, etc.*, 246 F. 2d 951, 952 [2d Cir.], cert. den. 355 U. S. 893; Restatement, Contracts, § 306, *Comment c*; § 315, subd. [2]; § 318; 10 N. Y. Jur., Contracts, §§ 386, 387, 395.) Neither of these rules are applicable to the holder who was probably as incapable of performing the conditions precedent in December, or any other month, as it was in June.

Lastly, the holder suggests that it was the pledgee of the letter of credit and, therefore, somehow entitled to exercise the right of Mr. Gilbert to an irrevocable credit (cf. Uniform Commercial Code, § 5–116). Assuming that one could be the pledgee (or assignee) of a traveler's letter of credit, it would mean, at best, some right to withhold the documents from the beneficiary or to compel him to execute the documents necessary to require the issuer to pay against drafts conforming strictly to the conditions of the letter.* From the appearance of the check-draft and the possession of the credit documents by the holder, it is quite likely that the check was given, as an undated check, to the holder, with the credit documents pledged to stand as an assurance that Mr. Gilbert would arrange, somehow, to make the check good before he could recover the credit documents. Or the check-draft, in only partially executed form, was sent with the credit documents to Switzerland from Brazil. But, however viewed, the holder does not attain a status sufficient to invoke the bank's obligation to pay against conforming drafts. And if the bank were to pay against anything but conforming drafts, it, in the absence of an effective estoppel, might be liable to its customer.

It is evident, then, that the holder has never fixed the obligation of the bank to pay, and that the time for such fixation has long passed. Whatever rights survive in favor of either the holder or the beneficiary, they are not those which arise from a proper draft presented for honor. That is all this case involves.

Accordingly, the order granting plaintiff holder summary judgment should be reversed, on the law, with costs to defendant-appellant, the judgment vacated, and defendant bank's cross

---

* As to the assignability of a traveler's letter of credit, a doubtful matter at best, see *Evansville Nat. Bank* v. *Kaufmann* (93 N. Y. 273, 277–278); Ward and Harfield (*op. cit. supra,* ch. 10); cf. Uniform Commercial Code (§ 5–116).

motion for summary judgment should be granted, with costs to defendant-appellant.

McNALLY, STEVENS, EAGER and STEUER, JJ., concur.

Order and judgment unanimously reversed upon the law, with costs to appellant, the judgment vacated, and defendant's cross motion for summary judgment granted, with $10 costs.