ALL OF THE ABOVE IS SO OR-DERED.

**HELMSLEY–SPEAR, INC., Plaintiff,**

v.

**WESTDEUTSCHE LANDESBANK GIR-OZENTRALE, individually and as agent, Nova–Park New York Inc. N.V., NP Holding N.V., Deutsche Anlagen–Leasing GmbH, Dal Multinational Leasing GmbH, Bayerische Landes-bank Girozentrale, Hessische Landes-bank Girozentrale, Landesbank Rhein-land–Pflaz Und Saar International SA, Dresdner Bank AG, Defendants.**

No. 86 Civ. 7759 (RWS).

United States District Court, S.D. New York.

Aug. 16, 1989.

Wien, Malkin & Bettex, New York City (Robert A. Machleder, of counsel), for plaintiff.

Shearman & Sterling, New York City (Kenneth M. Kramer, Lorraine K. Rak, of counsel); Stanley S. Arkin, P.C., New York City (Robert J. Hausen, of counsel), for defendants.

OPINION

SWEET, District Judge.

Defendants Westdeutsche Landesbank Girozentrale ("West LB"), Bayerische Lan-desbank Girozentrale, Hessische Landes-bank Girozentrale, Landesbank Rheinland–Pfalz und Saar International SA, and Dresdner Bang AG (collectively, the "Banks") and defendants Deutsche Anla-gen–Leasing GmbH ("DAL"), DAL Multi-national Leasing GmbH ("DALM"), N.P. Holding N.V. and Nova–Park New York Inc. N.V. ("NPNY") have moved pursuant to Rules 11 and 56, Fed.R.Civ.P. to strike the Amended Complaint of plaintiff Helms-ley–Spear, Inc. ("Helmsley–Spear") and for partial summary judgment dismissing the second and third claims of that Amended Complaint. Helmsley–Spear has cross-moved for summary judgment on the same causes of action. For the reasons set forth below, the Banks' motion will be granted, and the second and third causes of action in the Amended Complaint dismissed.

*Prior Proceedings*

The history of this litigation is contained in the opinion rendered on July 14, 1988, 692 F.Supp. 194 (the "July 14 Opinion"), corrected by the order of July 25, the order denying reargument of October 12, 1988, and the order of February 16, 1989 grant-ing the motion of Helmsley–Spear to amend its complaint. Familiarity with the orders and opinions is assumed.

The Amended Complaint was filed on February 24, 1989, adding two claims based on the cancellation provision of the Broker-

age Agreement between the parties, causes of action which had their origin, unfortunately as it turns out, in the July 14 Opinion. The Amended Complaint was not signed.

The Banks have moved to dismiss these new causes, to impose Rule 11 sanctions and Helmsley–Spear has moved for judgment on its behalf on the same causes. The motions were heard and fully submitted on May 19, 1989.

*The Facts*

The travail surrounding the effort to rehabilitate and sell the Gotham Hotel at 700 Fifth Avenue (the "Gotham" or the "Property") has been detailed in previous findings, none of which are altered by the submissions in connection with these motions. Those findings are therefore adopted here and will be repeated only to place this decision in the context of the events of 1984 and 1985 which according to Helmsley–Spear give rise to the second and third causes of action.

After gaining control of the Gotham, the Banks entered into an agreement formalized on October 1, 1984 (the "Agreement") under which Helmsley–Spear received the exclusive right to serve as broker in the sale of the Property. The Agreement expired by its terms on February 22, 1985 although it contained a self-executing extension period which extended the termination date to April 23, 1985. Payments were made to Helmsley–Spear in accordance with the Agreement.

Incentive payments were to be received by Helmsley–Spear upon the signing of a "sale contract" and a "sales agreement (Paragraph 14) which shall have been duly executed during the term of this [Brokerage] Agreement." There is no dispute between the parties as to the terms of the Agreement. Helmsley–Spear's right to the fees turned upon the execution of a contract of sale covering the Property during the term of the Agreement, an event which for a host of reasons previously detailed, never occurred.

The Agreement also provided that cancellation of the Agreement by the Banks during the term of the Agreement would re-sult in a $300,000 payment to Helmsley–Spear. It was this provision which was noted in the July 14 Opinion which has given rise to the subsequent proceedings and the Amended Complaint.

Early in February 1985 for their own purposes and on the suggestion of their counsel, the Banks concluded that it would be improvident to enter into a contract of sale which, given the complicated nature of the history of the Property, including pending litigation, would necessarily contain a number of representations, warranties and conditions difficult to predict and fulfill. Dr. Weiss, responsible for determining the Banks' position, determined that "a contract of sale would amount to little more than an option for the purchaser and that it would be prudent for the Banks to require a simultaneous contract and closing." This position was conveyed to Helmsley–Spear in February prior to the expiration date of the Agreement.

No protest or complaint was lodged at the time by Helmsley–Spear at this change of position which is now alleged to constitute an anticipatory breach of the Agreement and its termination. During the remaining term of the Agreement and for a period thereafter Helmsley–Spear continued its efforts to sell the Property, an event which came to pass on July 2, 1986 under an agreement of June 27, 1986.

During and before the term of the Agreement a number of complicating circumstances existed, previously described in prior opinions, including the imposition of liens, pending litigation and the tax consequences surrounding any transfer. There is no dispute between the parties as to the facts surrounding these circumstances, but the litigation to date has been concerned upon the effect of these facts on the parties' rights and obligations which have been the subject of the prior opinions, leaving unresolved only the question of anticipatory breach and termination arising out of the Banks' decision to have a simultaneous contract of sale and closing.

*Standards Applicable to Summary Judgment Motions*

Summary judgment is authorized if "there is no genuine issue as to any materi-

**45**

al fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R. Civ.P. 56(c). The moving party bears the burden of proving that no genuine issue of material fact exists. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986); *Corselli v. Coughlin,* 842 F.2d 23 (2d Cir. 1988). All ambiguities are resolved against the moving party, and all favorable inferences are drawn in favor of the party against whom summary judgment is sought. *See Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 158–59, 90 S.Ct. 1598, 1609, 26 L.Ed.2d 142 (1970); *Ramseur v. Chase Manhattan Bank,* 865 F.2d 460, 465 (2d Cir.1989); *Eastway Constr. Corp. v. City of New York,* 762 F.2d 243, 249 (2d Cir. 1985), *cert. denied,* 484 U.S. 918, 108 S.Ct. 269, 98 L.Ed.2d 226 (1987).

The Supreme Court recently has made clear that "at the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986); *see also Donahue v. Windsor Locks Bd. of Fire Comm'rs,* 834 F.2d 54, 58 (2d Cir. 1987). Summary judgment is permissible only in circumstances where "the evidence is such that a reasonable jury could not return a verdict for the nonmoving party." *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510.

However, courts should not be reluctant to grant summary judgment in appropriate cases. "One of the principal purposes of the summary judgment rule is to isolate and dispose of factually insupportable claims," *Celotex Corp. v. Catrett,* 477 U.S. 317, 323–24, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986), thereby permitting courts to avoid "protracted, expensive and harassing trials." *Meiri v. Dacon,* 759 F.2d 989, 998 (2d Cir.), *cert. denied,* 474 U.S. 829, 106 S.Ct. 91, 88 L.Ed.2d 74 (1985).

Rule 56(e) provides:

When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.

Fed.R.Civ.P. 56(e). Statements in affidavits not based on personal knowledge, *Sellers v. M.C. Floor Crafters, Inc.,* 842 F.2d 639, 643 (2d Cir.1988), and arguments or statements by counsel unsupported by the record, *Beyah v. Coughlin,* 789 F.2d 986, 989–90 (2d Cir.1986), cannot raise a genuine issue of fact requiring a trial.

*Helmsley–Spear Has Failed To Establish Impossibility*

Faced with a motion for summary judgment, Helmsley–Spear has failed to establish that the decision to have a simultaneous contract and closing made it impossible for the Agreement to be performed.

In seeking to recover upon a claim of anticipatory repudiation, Helmsley–Spear has the burden of demonstrating its willingness and ability to perform all of its obligations under the Brokerage Agreement. *See Reprosystem, B.V. v. SCM Corp.,* 522 F.Supp. 1257, 1278 (S.D.N.Y. 1981), *aff'd in part, rev'd in part,* 727 F.2d 257 (2d Cir.1984), *cert. denied,* 469 U.S. 828, 105 S.Ct. 110, 83 L.Ed.2d 54 (1984) (an aggrieved party's "right of action for anticipatory breach depends on his shouldering the burden of demonstrating his readiness, willingness and ability to tender performance when due"); *United States Overseas Airlines, Inc. v. Compania Aerea Viajes Expresos De Venezuela, S.A.,* 246 F.2d 951, 952 (2d Cir.1957) (court upheld trial court's determination that since defendant "failed to carry its burden of showing that it was ready and willing to perform its part of the option contract ... it cannot obtain damages for [plaintiff's] anticipatory repudiation"); *Scholle v. Cuban–Venezuelan Oil Voting Trust,* 285 F.2d 318, 320 (2d Cir.1960) (although "[a]cts made futile by the breaching party are not a prerequisite to recovery ... [the party wronged] must prove that he intended to and was able to perform when his performance was due"); *Ufitec, S.A. v. Trade Bank and Trust Co.,*

21 A.D.2d 187, 190, 249 N.Y.S.2d 557, 560 (1st Dep't 1964), aff'd, 16 N.Y.2d 698, 261 N.Y.S.2d 893, 209 N.E.2d 551 (1965) ("[a]n anticipatory breach, in a proper case, may excuse one from performing a useless act, but it does not excuse one from the obligation of proving readiness, willingness, and ability to have performed the conditions precedent").

Helmsley–Spear has, of course, reiterated its earlier position, namely, that it was the conduct of the Banks which frustrated the performance, detailing the circumstances previously set forth, apart from the simultaneous contract and closing decision. The July 14 Opinion sought to resolve those issues.

Helmsley–Spear has contended again that it did all it could to sell the hotel and even continued those efforts after the expiration date of the Brokerage Agreement. While Helmsley–Spear produced two offers from the Cohen Group and a sale of the hotel was eventually consummated, no sale was ever consummated pursuant to the terms of these offers and no sale was ever consummated pursuant to terms that would have been incorporated in the supposedly delayed contract. It should be noted that the two principal obstacles to a closing identified by Helmsley–Spear, (Rene Hatt's efforts to enjoin a transfer of the Gotham Hotel and the presence of the Flushing Federal receiver) posed far greater obstacles to a February 22, 1985 closing than to an April 23, 1985 closing. By March 5, 1985, all restraints obtained by Rene Hatt were lifted, and no applications for stays or other injunctive relief were pending.

In both Marvel v. Lilli Ann Corporation, 28 Misc.2d 979, 215 N.Y.S.2d 432 (Sup.Ct. Kings Co.), aff'd, 15 A.D.2d 565, 223 N.Y.S.2d 122 (2d Dep't 1961), aff'd, 11 N.Y.2d 938, 228 N.Y.S.2d 826, 183 N.E.2d 227 (1962), and Boyle v. Petrie Stores, 136 Misc.2d 380, 518 N.Y.S.2d 854 (Sup.Ct. N.Y. Co. 1987), cited by Helmsley–Spear, the defendant effected a complete and unequivocal break in the contractual relationship between the parties. Here, in contrast, the change in the relationship was the addition of a new condition which prospectively might or might not have affected Helmsley–Spear's ability to earn a commission.

No evidence, affidavit or testimony has been submitted to establish that the simultaneous contract and closing provision made performance of the Agreement by April 23, 1985 impossible.

*The Failure to Sign the Amended Complaint*

 The absence of an attorney's signature on an Amended Complaint violates the certification requirements of Fed.R. Civ.P. 11 and failure to sign a pleading may constitute grounds for striking the pleading. *Wrenn v. New York City Health and Hospitals Corp.*, 104 F.R.D. 553, 556–57 (S.D.N.Y.1985).

Helmsley–Spear's initial complaint was filed in the Supreme Court, New York County. Accordingly, the complaint followed the form for state court pleadings. The action was then removed to this court by the Banks. Helmsley–Spear, in its proposed Amended Complaint, retained the form of its initial pleading on the stated ground that it was appropriate to do so when the purpose of the amendment was simply to add claims, but otherwise not change the claims originally asserted. It is Helmsley–Spear's position that there was no requirement to convert the form of its complaint to a federal complaint, and thereby plead, for example, the requisite federal jurisdictional grounds for the action when its original choice of forum had been the state court. However, Helmsley–Spear has stated its counsel is prepared at the court's request to sign the Amended Complaint.

Given the turns that this litigation has taken, and the imminent dismissal of the second and third causes of action contained in the Amended Complaint, to require counsel to sign the Amended Complaint would be a futility. Any Rule 11 liability could well be based on the previously signed motion for leave to file the Amended Complaint.

Notwithstanding the following refusal to impose sanctions under these circumstances, the Amended Complaint, filed in this

court, regardless of its antecedents, is dismissible as unsigned.

*Sanctions*

Perhaps the origin of the second and third causes of action was an *ex cathedra* reference in the July 14 Opinion. In any case, given the circumstances here there is no demonstrated lack of good faith on the part of Helmsley–Spear's counsel and thus no violation arising from failure to sign the Amended Complaint. Hopefully, this subchapter to the litigation is now closed.

*Conclusion*

The second and third causes of the Amended Complaint will be dismissed, the cross-motion for summary judgment denied, as well as the motion for sanctions.

Submit order on notice.

A pretrial conference will be held at counsel's earliest convenience.

It is so ordered.