CHESTER CHARLES SZTEJN, Plaintiff, *v.* J. HENRY SCHRODER BANKING CORPORATION, ROBERT SCHWARZ BRISTLE CORP., TRANSEA TRADERS, LTD., and THE CHARTERED BANK OF INDIA, AUSTRALIA AND CHINA, Defendants.

Supreme Court, Special Term, New York County, July 1, 1941.

*Natbony, Stein & Solomon,* for the plaintiff.

*Sullivan & Cromwell,* for the defendant J. Henry Schroder Banking Corporation.

*Kurzman & Frank,* for the defendant Robert Schwarz Bristle Corp.

*Duer, Strong & Whitehead,* for the defendant The Chartered Bank of India, Australia and China.

SHIENTAG, J. This is a motion by the defendant The Chartered Bank of India, Australia and China (hereafter referred to as The Chartered Bank), made pursuant to subdivision 5 of rule 106 of the Rules of Civil Practice to dismiss the supplemental complaint on the ground that it fails to state facts sufficient to constitute a cause of action against the moving defendant. The plaintiff brings this action to restrain the payment or presentment for payment of drafts under a letter of credit issued to secure the purchase price of certain merchandise, bought by the plaintiff and his coadventurer, one Schwarz, who is a party defendant in this action. The plaintiff also seeks a judgment declaring the letter of credit and drafts thereunder null and void. The complaint alleges that the documents accompanying the drafts are fraudulent in that they do not represent actual merchandise but instead cover boxes fraudulently filled with worthless material by the seller of the goods. The moving defendant urges that the complaint fails to state a cause of action against it because The Chartered Bank is only concerned with the documents and on their face these conform to the requirements of the letter of credit.

On January 7, 1941, the plaintiff and his coadventurer contracted to purchase a quantity of bristles from the defendant Transea Traders, Ltd. (hereafter referred to as Transea), a corporation having its place of business in Lucknow, India. In order to pay for the bristles, the plaintiff and Schwarz contracted with the defendant J. Henry Schroder Banking Corporation (hereafter referred to as Schroder), a domestic corporation, for the issuance of an irrevocable letter of credit to Transea which provided that drafts by the latter for a specified portion of the purchase price of the bristles would be paid by Schroder upon shipment of the described merchandise and presentation of an invoice and a bill of lading covering the shipment, made out to the order of Schroder.

The letter of credit was delivered to Transea by Schroder's correspondent bank in India; Transea placed fifty cases of material on board a steamship, procured a bill of lading from the steamship company and obtained the customary invoices. These documents describe the bristles called for by the letter of credit. However, the complaint alleges that in fact Transea filled the fifty crates with cowhair, other worthless material and rubbish with intent to simulate genuine merchandise and defraud the plaintiff and Schwarz. The complaint then alleges that Transea drew a draft under the letter of credit to the order of The Chartered Bank and delivered the draft and the fraudulent documents to the " Chartered Bank at Cawnpore, India, for collection for the account of said defendant Transea." The Chartered Bank has presented the draft along

with the documents to Schroder for payment. The plaintiff prays for a judgment declaring the letter of credit and draft thereunder void and for injunctive relief to prevent the payment of the draft. For the purposes of this motion the allegations of the complaint must be deemed established and " every intendment and fair inference is in favor of the pleading." (*Madole* v. *Gavin*, 215 App. Div. 299, 300; *McClare* v. *Mass. Bonding & Ins. Co.*, 266 N. Y. 371, 373.) Therefore, it must be assumed that Transea was engaged in a scheme to defraud the plaintiff and Schwarz, that the merchandise shipped by Transea is worthless rubbish and that The Chartered Bank is not an innocent holder of the draft for value but is merely attempting to procure payment of the draft for Transea's account.

It is well established that a letter of credit is independent of the primary contract of sale between the buyer and the seller. The issuing bank agrees to pay upon presentation of documents, not goods. This rule is necessary to preserve the efficiency of the letter of credit as an instrument for the financing of trade. One of the chief purposes of the letter of credit is to furnish the seller with a ready means of obtaining prompt payment for his merchandise. It would be a most unfortunate interference with business transactions if a bank before honoring drafts drawn upon it was obliged or even allowed to go behind the documents, at the request of the buyer, and enter into controversies between the buyer and the seller regarding the quality of the merchandise shipped. If the buyer and the seller intended the bank to do this they could have so provided in the letter of credit itself, and in the absence of such a provision the court will not demand or even permit the bank to delay paying drafts which are proper in form. (*O'Meara Co.* v. *National Park Bank*, 239 N. Y. 386; *Laudisi* v. *American Exchange Nat. Bank*, Id. 234; *Williams Ice Cream Co., Inc.*, v. *Chase Nat. Bank*, 210 App. Div. 179; *Frey & Son, Inc.*, v. *Sherburne Co.*, 193 id. 849; *Bank of New York & Trust Co.* v. *Atterbury Bros., Inc.*, 226 id. 117; affd., 253 N. Y. 569; *Brown* v. *Rosenstein Co.*, 120 Misc. 787; affd., 208 App. Div. 799; *Bank of Taiwan* v. *Gorgas-Pierie Mfg. Co.*, 273 Fed. 660; *American Steel Co.* v. *Irving Nat. Bank*, 266 id. 41; certiorari denied, 258 U. S. 617; Commercial Letters of Credit, William E. McCurdy, 35 Harv. L. Rev. 715, 724; 53 A. L. R. 57, 70.) Of course, the application of this doctrine presupposes that the documents accompanying the draft are genuine and conform in terms to the requirements of the letter of credit. (*Lamborn* v. *Lake Shore Banking & Trust Co.*, 196 App. Div. 504; affd., 231 N. Y. 616; *Bank of Montreal* v. *Recknagel*, 109 id. 482; 38 Yale L. J. 111, 112.)

However, I believe that a different situation is presented in the instant action. This is not a controversy between the buyer and

seller concerning a mere breach of warranty regarding the quality of the merchandise; on the present motion, it must be assumed that the seller has intentionally failed to ship any goods ordered by the buyer. In such a situation, where the seller's fraud has been called to the bank's attention before the drafts and documents have been presented for payment, the principle of the independence of the bank's obligation under the letter of credit should not be extended to protect the unscrupulous seller. It is true that even though the documents are forged or fraudulent, if the issuing bank has already paid the draft before receiving notice of the seller's fraud, it will be protected if it exercised reasonable diligence before making such payment. (*Bank of New York & Trust Co.* v. *Atterbury Bros., Inc., supra; Brown* v. *Rosenstein Co., supra.*) However, in the instant action Schroder has received notice of Transea's active fraud before it accepted or paid the draft. The Chartered Bank, which under the allegations of the complaint stands in no better position than Transea, should not be heard to complain because Schroder is not forced to pay the draft accompanied by documents covering a transaction which it has reason to believe is fraudulent.

Although our courts have used broad language to the effect that a letter of credit is independent of the primary contract between the buyer and seller, that language was used in cases concerning alleged breaches of warranty; no case has been brought to my attention on this point involving an intentional fraud on the part of the seller which was brought to the bank's notice with the request that it withhold payment of the draft on this account. The distinction between a breach of warranty and active fraud on the part of the seller is supported by authority and reason. As one court has stated: "Obviously, when the issuer of a letter of credit knows that a document, although correct in form, is, in point of fact, false or illegal, he cannot be called upon to recognize such a document as complying with the terms of a letter of credit." (*Old Colony Trust Co.* v. *Lawyers' Title & Trust Co.*, 297 Fed. 152, 158; certiorari denied, 265 U. S. 585.) (See, also, *Higgins* v. *Steinhardter*, 106 Misc. 168 [distinguished in *Frey & Son, Inc.*, v. *Sherburne Co.*, 193 App. Div. 849]; *Societe Metallurgique* v. *British Bank for Foreign Trade*, 11 Lloyd's List L. Rep. 168, 170 [K. B. D. 1922]; *Finkelstein* on Legal Aspects of Commercial Letters of Credit, pp. 230, 238, 246; Campbell on Guaranties and The Suretyship Phases of Letters of Credit, 85 U. of Pa. L. Rev. 261, 271, 272; Thayer on Irrevocable Credits in International Commerce: Their Legal Effects, 37 Col. L. Rev. 1326, 1335, 1342; Gutteridge on The Law of Banker's Commercial Credits, pp. 43, 72; Brown on Documentary Conditions of Payment in Commercial Letters of Credit, 13 Tulane L. Rev. 495,

507; Hanna on Cases and Materials on Security [1st ed.], p. 182; 29 Ill. L. Rev. 806, 808; 38 Harv. L. Rev. 1117.)

No hardship will be caused by permitting the bank to refuse payment where fraud is claimed, where the merchandise is not merely inferior in quality but consists of worthless rubbish, where the draft and the accompanying documents are in the hands of one who stands in the same position as the fraudulent seller, where the bank has been given notice of the fraud before being presented with the drafts and documents for payment, and where the bank itself does not wish to pay pending an adjudication of the rights and obligations of the other parties. While the primary factor in the issuance of the letter of credit is the credit standing of the buyer, the security afforded by the merchandise is also taken into account. In fact, the letter of credit requires a bill of lading made out to the order of the bank and not the buyer. Although the bank is not interested in the exact detailed performance of the sales contract, it is vitally interested in assuring itself that there are some goods represented by the documents. (Finkelstein on Legal Aspects of Commercial Letters of Credit, p. 238; *O'Meara* v. *National Park Bank*, 239 N. Y. 386, 401 [opinion of CARDOZO, J., dissenting]; Thayer on Irrevocable Credits in International Commerce, 37 Col. L. Rev. 1326, 1335.)

On this motion only the complaint is before me and I am bound by its allegation that The Chartered Bank is not a holder in due course but is a mere agent for collection for the account of the seller charged with fraud. Therefore The Chartered Bank's motion to dismiss the complaint must be denied. If it had appeared from the face of the complaint that the bank presenting the draft for payment was a holder in due course, its claim against the bank issuing the letter of credit would not be defeated even though the primary transaction was tainted with fraud. This I believe to be the better rule despite some authority to the contrary. (See *Old Colony Trust Co.* v. *Lawyers' Title & Trust Co.*, *supra;* Thayer on Irrevocable Credits in International Commerce, 37 Col. L. Rev. 1326, 1344; Campbell on Guaranties and the Suretyship Phases of Letters of Credit, 85 U. of Pa. L. Rev. 261, 272; but see Finkelstein on Legal Aspects of Commercial Letters of Credit, p. 248; *O'Meara Co.* v. *National Park Bank*, *supra*.)

The plaintiff's further claim that the terms of the documents presented with the draft are at substantial variance with the requirements of the letter of credit does not seem to be supported by the documents themselves.

Accordingly, the defendant's motion to dismiss the supplemental complaint is denied.