Max Bloom, J.
These companion motions by plaintiff seek temporary injunctions restraining defendant, Banca Commerciale Italiana (BCI) from paying out on a letter of credit issued by plaintiff for the benefit of defendant, Pictorial Sciences, Inc. (PSI), which has made demand under the letter, and PSI from demanding or receiving the proceeds of the letter.
Plaintiff is a Venezuelan corporation; PSI is a Californian corporation. Prior to November, 1976, both were in the business of aerial photography, mapping and surveying. In the course of their business, each used a Wild RC-8 camera with special accessories. Sometime in the early part of November, or shortly prior thereto, plaintiff’s camera was damaged and was returned to Wild Heerbrugg, the manufacturer of the camera (a Swiss corporation), for repairs. Since it was estimated that the repairs would take at least three months, plaintiff’s need for a camera caused it to cast about for a party from whom it could rent such a camera. On November 12, 1976, in Florida, it negotiated an agreement with PSI whereby PSI agreed to lease a Wild RC-8 camera owned by it to plaintiff for a period of three months, at a monthly rental of $1,500 per month. Plaintiff agreed to return the camera on February 15, 1976 (obviously an error) unless the parties agreed to a longer term. Critical to the issue here involved is the proviso that the camera was to be secured by a letter of credit in the amount of $47,500, with the condition that if the *831 camera was not returned by February 28, 1976, the amount of the letter of credit would be paid "in lieu of the return of camera”. BCI, with which the plaintiff maintained an account, was authorized to make advance payment of the rent for three months and to issue a letter of credit to PSI. Crocker Commercial Bank, a California institution, was designated as the correspondent bank and by Telex dated November 12, 1976, confirmed by letter dated November 15, 1976, BCI notified Crocker that it had opened an irrevocable letter of credit in the sum of $47,500 in favor of PSI "valid till restitution of equipment which we describe hereunder and/or February 10, 1977, whichever comes first” (italics supplied). No explanation is made for the change in the contractual provision that payment was to be made if the camera was not returned by February 28. Because of this change, the letter of credit would expire and PSI’s right to draw against it would lapse before the conditions giving rise to PSI’s right to invoke the letter could occur.
On January 27, 1977, PSI notified plaintiff that the letter would expire on February 10, and requested an extension thereof "until the camera was returned”. By telephone, an oral extension of the lease was agreed to and BCI was instructed to pay an additional month’s rent for the camera and to extend the letter for the same period of time. At this point, the parties conformed their agreement to the error previously made in providing for the expiration of the letter on the 10th of the month. In March, the same procedure was followed, except that this time the extension was initiated by plaintiff. In April, a further extension occurred although there is a dispute as to the circumstances. Plaintiff contends that it was negotiated in the same manner as were the prior extensions. PSI contends that during the first week in April, it telephoned plaintiff to notify it that the termination of the March extension was approaching and that it expected a return of its camera by April 10. When plaintiff suggested a further extension to May 10, PSI refused and said that if the camera was not returned by April 10, it would draw upon the letter of credit. Plaintiff, it avers, stated that it understood PSI’s position and would return the camera. PSI insists that, in this phone call, plaintiff agreed to notify PSI on April 8, when the camera would arrive in California. No such call was received. Thereupon, PSI asserts that it sought to draw on the letter. However, because of the intervention of a weekend, April 10 *832 had come and gone and when BCI received the advice from PSI, it notified PSI that the letter had expired. Thus, contends PSI, in order to protect its rights, it reluctantly agreed to a further extension of the lease to May 10.
On May 7, plaintiff was informed by Wild Heerbrugg that its camera had been repaired and was awaiting pickup by plaintiff at Customs. Since May 7 was a Saturday, the pickup and inspection did not occur until May 9. On that day, plaintiff notified PSI that it was crating and shipping PSPs camera via Pan-Am. In order to insure that PSI would be reimbursed for shipping time, plaintiff asked for an extension of the lease for two weeks and offered to pay one-half month’s rental. PSI informed plaintiff that it no longer wanted the camera and that it had made demand upon BCI for payment under the letter. This action was thereupon instituted. However, prior to service of the papers upon BCI, BCI had issued its own check to Crocker pursuant to the letter. Since service of the order was made prior to the clearance of the check, payment was stopped.
Of interest to the merits of the action even though not of moment on these motions, is the fact that on two occasions during the life of the lease, PSI offered to sell the camera to plaintiff at a price substantially below the amount fixed in the letter of credit. The first offer was at $40,000. The second offer was at $36,000. When it was rejected on the ground that the asking price was too high, PSI invited plaintiff to make a counterproposal.
Payment by the issuer has thus far been temporarily restrained, bottomed upon the alleged fraud of the beneficiary. Plaintiff contends that it is entitled to a continuance of that restraint, pending trial under paragraph (b) of subdivision (2) of section 5-114 of the Uniform Commercial Code. That statute is a codification of pre-existing law in this State (Sztejn v Schroder Banking Corp., 177 Misc 719). There, a letter of credit was issued to secure a sale of goods. The seller, instead of shipping the proper goods, crated rubbish, procured the bills of lading from the steamship company, obtained the customary invoices and tendered these documents to its correspondent bank and demanded payment under the letter of credit. In denying relief to the seller the court took occasion to point out the nature of the transaction: "It is well established that a letter of credit is independent of the primary contract of sale between the buyer and seller. The issuing bank agrees *833 to pay upon presentation of documents, not goods. This rule is necessary to preserve the efficiency of the letter of credit as an instrument for the financing of trade * * * It would be a most unfortunate interference with business transactions if a bank, before honoring drafts drawn upon it was obliged or even allowed to go behind the documents, at the request of the buyer, and enter into controversies between the buyer and seller regarding the quality of the merchandise shipped.” (Sztejn v Schroder Banking Corp., supra, p 721; see, also, 34 NY Jur, Letters of Credit, § 4; Laudisi v American Exch. Nat. Bank, 239 NY 234; O’Meara Co. v Nat. Park Bank, 239 NY 386; Rosenfeld v Banco Internacional, 27 AD2d 826).
However, in Sztejn, the court went on to point out that: "a different situation is presented in the instant action. This is not a controversy between buyer and seller concerning a mere breach of warranty regarding the quality of merchandise; on the present motion, it must be assumed that the seller has intentionally failed to ship any goods ordered by the buyer” (Sztejn v Schroder Banking Corp., supra, pp 721-722), thus constituting a fraud. In these circumstances, it held that payment of the letter should be enjoined (see, also, United Bank v Cambridge Sporting Goods Corp. 41 NY2d 254).
Plaintiff contends in this case that the various demands by PSI upon BCI, including the final demand by PSI on May 4, 1977, bottomed on the claim "that the conditions between the beneficiary and the accountee have not been met”, were (with the exception of the April demand, which was late), premature and demonstrate an intention to defraud by forcing the sale of its camera to plaintiff at the amount specified in the letter of credit. This amount is claimed to be far in excess of its value on the open market and is higher by $11,500 than the price at which PSI offered the camera to plaintiff.
The underlying issue on this case, as it was in Sztejn, is whether the bank’s obligation under the letter of credit should be extended to protect the beneficiary where it is alleged that the beneficiary has engaged in fraudulent conduct. This was the issue to which the papers submitted in this motion were almost exclusively devoted. The answer is to be found in paragraph (b) of subdivision (2) of section 5-114 of the Uniform Commercial Code.
That provision permits the issuer to honor the "demand for payment despite notification from the customer of fraud, forgery or other defect not apparent on the face of the *834 documents but a court of appropriate jurisdiction may enjoin such honor”. However, the restraint issued by a "court of appropriate jurisdiction” can be of avail only if the issuer has not already honored the demand (Harfield, Practice Commentaries, McKinney’s Cons Laws of NY, Book 7B, Uniform Commercial Code, § 5-114, p 686).
Plaintiffs initial temporary restraining order enjoining defendants from paying under the letter of credit was obtained on May 13, 1977. Concededly, before the order was served upon BCI, on the afternoon of May 13, BCI had mailed its check for $47,500 to Crocker, at San Bernardino, California, for the account of PCI. Thus, at the time the restraining order was served on BCI, a check had been issued by BCI and the account of plaintiff had been debited.
The second order to show cause containing a restraining order was issued on May 17, 1977. It stayed BCI from paying any amounts demanded under the letter of credit. Accordingly, when Crocker subsequently presented the check, it was dishonored. However, once the BCI check was issued, the rules governing bank deposits and collections under article 4 of the Uniform Commercial Code, rather than the rules governing letters of credit (Uniform Commercial Code, art 5) apply.
On May 13, 1977, prior to service of the order, BCI, the issuing bank, had determined that PSI, the beneficiary had complied with the terms of the letter of credit and it issued its check in compliance therewith. Under subdivision (21) of section 1-201 of the Uniform Commercial Code, it had honored the letter and its obligation with respect thereto was terminated (Chase Manhattan Bank v Equibank, 550 F2d 882; Liberty Nat. Bank & Trust Co. v Bank of Amer. Nat. Trust & Sav. Assn., 218 F2d 831; 42 Fordham L Rev 706, 711; Fair Pavilions v First Nat. City Bank, 24 AD2d 109, 112; 34 NY Jur, Letters of Credit, § 4; 29 Albany L Rev, 294, 298-300), and no stop payment order thereafter issued, based upon the underlying transaction, could be effective (Dziurak v Chase Manhattan Bank, N. A., 58 AD2d 103; Meckler v Highland Falls Sav. & Loan Assn., 64 Misc 2d 407; Moon Over the Mountain v Marine Midland Bank, 87 Misc 2d 918).
Subdivision (1) of section 4-213 of the Uniform Commercial Code provides that a payor bank finally pays an item when it has done any of the following, whichever happens first:
"(c) completed the process of posting the item to the indi *835 coted account of the drawer, maker or other person to be charged therewith; or
(d) made a provisional settlement for an item and failed to revoke the settlement in the time and manner permitted by statute, clearing house rules or agreement.”
The wide use of letters of credit in national and international transactions makes it imperative that the basis upon which final payment is measured be kept standard. Thus, the Official Comment to section 4-213 of the Uniform Commercial Code (McKinney’s Cons Laws of NY, Book 62^, pp 587-588) notes that even when an eastcoast bank is dealing with a westcoast bank, "to avoid the confusion resulting from variable standards, the rule basing final payment exclusively on action of the payor bank is not affected by whether payment is made by a remittance draft or whether such draft is itself paid. Consequently, subsection (1) rejects those cases which base time of payment of the item in remittance cases on whether the remittance draft was accepted [UCC 3-410] by the presenting bank [citing cases] or whether the remittance draft was itself paid [citing cases]” (Official Comment, supra, p 588.)
Paragraph (a) of subdivsion (1) of section 4-211 of the Uniform Commercial Code provides that a collecting bank (in this instance Crocker) may take in settlement of an item, a check of the remitting bank (BCI).
Paragraph (j) of subdivision (1) of section 4-104 of the Uniform Commercial Code defines "settle” as "to pay in cash, by clearing house settlement, in a charge or credit or by remittance”. Though undefined in the code, the word "remittance” has its usual meaning: the act of transmitting money or credit (Funk and Wagnalls New Standard Dictionary [1941 unabridged], p 2083; 76 CJS, p 905; Black’s Law Dictionary [4th ed, remittance, p 1458).
Nor has there been any indication in the more than extensive and complete papers submitted in this case or at the oral argument that there was any reservation of right to revoke the settlement made by BCI to Crocker. It would appear that BCI in fact made no such reservation.
When BCI issued its check to Crocker for the account of PSI, the check was imprinted with the caption "official check.” As an "official check” it bears the signature of an authorized bank officer whose signature binds the bank to a primary obligation. This official check, "[u]nlike an ordinary check drawn on a specific deposit balance * * * is an obligation of *836 the bank which issues it and a promise to draw the amount of the check from its own resources” (Moon Over the Mountain v Marine Midland Bank, 87 Misc 2d 918, 920), is one in which the bank is both drawer and drawee and its issuance constitutes acceptance by the issuing bank (Kaufman v Chase Manhattan Bank, Nat Assn., 370 F Supp 276) and release of the principal obligor (Uniform Commercial Code, § 3-802, subd [1], par [a]; Abraham & Co. v Dollar Sav. Bank, 48 AD2d 807; Meckler v Highland Falls Sav. & Loan Assn., 64 Misc 2d 407).
Finally, under section 4-303 of the Uniform Commercial Code, which establishes the obligation of a payor bank when legal process is served upon it provides, in part, that such legal process comes too late to terminate, suspend or modify a pre-existing right or duty if the bank has completed the process of posting the item to the indicated account of the drawer, maker or other person to be charged therewith or otherwise has evidenced, by examination of such indicated account and by action, its decision to pay the item.
Here, it is plain that the restraint issued by this court came too late to prevent BCI from honoring the demand from PSI under the letter of credit; that payment had, in fact, been made by the issuance of BCI’s check to Crocker, and that BCI had already completed the posting of the item to plaintiff’s account.
Thus, whatever may be the relative rights of plaintiff and PSI with respect to the subject matter of the action, no injunction may issue. The motions are, therefore, denied.