**AMERICAN EXPORT GROUP INTERNATIONAL SERVICES, INC., and Aegis Europe Limited, Plaintiffs,**

v.

**SALEM M. AL-NISF ELECTRICAL CO., W.L.L. and First American Bank, N.A., Defendants;**

**The National Bank of Kuwait, Sak, Intervenor.**

Civ. A. No. 87–0304.

United States District Court, District of Columbia.

Feb. 24, 1987.

David N. Braus, Washington, D.C., for plaintiffs.

James F. Hibey, Denise M. Zavagno, Washington, D.C., for defendant First American Bank, N.A.

Jack McKay, John H. More, Washington, D.C., for intervenor The Nat. Bank of Kuwait.

**MEMORANDUM**

GESELL, District Judge.

This is an action to prevent payment in satisfaction of two irrevocable international standby letters of credit.

American Export Group International Services, Inc. and Aegis Europe Limited, its wholly owned foreign subsidiary ("plaintiff"), contracted with defendant Salem M. Al-Nisf Electrical Co., W.L.L. ("Salem"), a private company incorporated in Kuwait, to

supply construction materials and electrical equipment which is warranted for one year. Salem required two performance bonds which were issued by The National Bank of Kuwait, SAK ("NBK") and the bonds in turn were backed by irrevocable international standby letters of credit, numbers ID–1543SB and ID–1627SB, issued to NBK in 1979 and 1980 by plaintiff's U.S. banker, First American Bank, N.A. ("First American"). The performance bonds and letters of credit carry a total value of $593,851.

Salem made what plaintiff insists was a fraudulent claim against the performance bonds. On January 29, 1987 NBK advised First American that the performance bonds had been called and that Salem would be paid on February 2, 1987, and sent documents seeking payment on the letters of credit. By January 31, 1987 telex plaintiff provided NBK with a copy of a telex sent Salem on the previous day protesting the attempted call as fraudulent. On February 2, 1987, as required by Kuwaiti law, NBK paid Salem's call of the performance bonds. On February 6, 1987, correcting certain deficiencies in its original documentation, NBK presented all appropriate documentation to First American for its call on the letters of credit, and payment became due. Plaintiff does not claim that either bank participated in any way in the fraudulent conduct it attributes to Salem. First American recognizes it is obligated to pay unless enjoined.

The Court temporarily restrained payment by Order dated February 10, 1987 until today to allow the parties to gather further factual materials and to provide NBK or Salem an opportunity to appear. NBK intervened. The issue has now been fully presented on plaintiff's motion for a preliminary injunction, supported by testimony and documents. Both banks have also supplied further documents and briefs.

Plaintiff claims, and has presented supporting documents and testimony to the effect: (1) that it has supplied the electrical equipment on which Salem bases its demand under the performance bonds; (2) that the equipment was fully tested and after installation is operating; (3) that the

work was accepted and completed; and (4) that the one-year warranty period had run by July 1985. It further contends that under the arrangement Salem should have released the letters of credit long ago, but that it has consistently but improperly refused to do so when requested. Under the terms of the arrangement neither plaintiff nor First American can cancel the letters of credit.

Plaintiff surmises that because oil marketing conditions have been unfavorable to the economy of Kuwait, Salem is short of funds and has made misrepresentations to NBK to obtain immediate, much-needed cash. Irreparable injury is claimed on the ground that plaintiff will eventually be unable to recoup anything from Salem and that the loss is a serious blow to its own affairs because of other strains occurring due to economic conditions in Arab oil countries.

The reluctance of federal courts to grant injunctive relief in situations such as this has long been recognized. The integrity of bank credit in international commerce lies at the heart of international business affairs. The utility of letters of credit in business practice and equitable considerations must cause a court to hestitate to interfere. *See, e.g., The Foxboro Co. v. Arabian American Oil Co.*, 805 F.2d 34, 37 (1st Cir.1986); *Enterprise International, Inc. v. Corporacion Estatal Petrolera Ecuatoriana*, 762 F.2d 464, 473–74 (5th Cir.1983). The Court in short, is called on to exercise its discretion in considering preliminary injunctive relief, hesitantly and with care.

Plaintiff relies on the famous case of *Sztegn v. J. Henry Schroder Banking Corp.*, 177 Misc. 719, 31 N.Y.S.2d 631 (Sup. Ct.1941), a case allowing injunctive relief to prevent blatant gross fraud in the calling of a letter of credit where fraud in the underlying transaction was uncontroverted by physical proof. The Uniform Commercial Code has adopted the *Sztegn* principle and under the parallel provision of District of Columbia law, which is controlling in this case, it is within the authority of the Court to protect an aggrieved party in such

circumstances. D.C.Code Ann. § 28:5–114(2)(b) (1981). *See Itek Corp. v. First National Bank of Boston,* 730 F.2d 19, 24–25 (1st Cir.1984). But the Court must recognize that the standby letters of credit running between the two banks involve a contract wholly independent of the alleged fraud by Salem. *See Enterprise International, Inc., supra,* 762 F.2d at 474. Moreover, as the documents demonstrate NBK was under no duty to inquire into or obtain proof going to the merits of Salem's demand against the performance bonds.[1]

At no stage of this proceeding has Salem responded to plaintiff's allegations or given any explanation of its conduct. Its position on the merits of its claims therefore remains for resolution and will apparently be addressed in a subsequent arbitration.[2] Given the circumstances of this case the arbitration process will obviously be long and tedious.

Under the established law of this Circuit, whether a preliminary injunction may issue depends on the Court's balancing of four factors: (1) whether plaintiff is likely to prevail on the merits; (2) whether plaintiff will be irreparably injured absent relief; (3) whether relief would significantly harm other interested parties; and (4) whether the public interest would be advanced or retarded by issuance of relief. *WMATC v. Holiday Tours, Inc.,* 559 F.2d 841, 842–43 (D.C.Cir.1977).

Plaintiff has no likelihood of success on the merits of its claim against First American Bank; it concedes the bank is free to pay on the letters of credit absent an injunction, without fear of liability. On the one-sided showing made by plaintiff, its prospects of success in arbitration are substantial, but even with such a showing plaintiff is unlikely to prevail on its claim that NBK should be barred from drawing on the letters of credit to recoup the funds it was required to pay Salem under the terms of the performance bonds. Therefore plaintiff has not demonstrated substantial likelihood of success in permanently enjoining First American Bank from honoring the letters of credit.

As to irreparable injury, plaintiff expresses great concern that it will be unable to collect from Salem through arbitration or otherwise, but it offers nothing concrete in this regard. Nothing has been presented showing either that Salem will be unable to pay or that legal process to force payment is unavailable. That it has available remedies at law is apparent. Should NBK's involvement later appear to have been collusive, that bank has a branch in New York City with major assets sufficient to satisfy any judgment that might be issued against it in the United States. Plaintiff's proof thus falls far short of the showing of inadequate legal remedies that has traditionally been required by other federal courts in comparable situations, *see Enterprise International, Inc., supra,* 762 F.2d at 473. Plaintiff has failed to establish irreparable injury.

It is clear that issuance of a preliminary injunction would deprive NBK for a substantial period of time of use of funds it has paid out to Salem on the expectation that First American Bank would immediately tender payment on the letters of credit. Proper appreciation of this hardship must take into account that plaintiff is a sophisticated business enterprise familiar with international business practices, and yet willing to waive normal protections. In early dealings with Salem it sought provisions that could have eliminated the present problem by requiring Salem to present clear proof of any claim against the underlying performance bonds and of prior notice and opportunity to cure, before pay-

---

1. In its memorandum plaintiff relies on accepted general practices under the *Uniform Rules For Contract Guarantees,* Int'l Chamber of Commerce, Pub. No. 325 (1978), requiring that where a guarantee is silent on the matter of documentation a beneficiary must submit with its claim proof of a court decision or arbitral award justifying the claim. These provisions are irrelevant because plaintiff knowingly gave up such protections by agreeing explicitly that such documentation was not required.

2. Plaintiff advised the Court on February 19, 1987 in open court that it has decided to proceed against Salem by arbitration pursuant to the terms of their contract. Salem has not been served.

ment on the bonds was required and the letters of credit would be activated. The parties ultimately provided that a mere statement of performance breach by Salem was sufficient to trigger the obligations. Plaintiff knowingly gave up this protection, to gain the business opportunity. It also failed to take legal action to secure release from the letters of credit because of its asserted completion of its contract obligations.

There is a vital public interest against issuance of relief, which emphasizes the need to sustain international arrangements for irrevocable letters of credit.

Plaintiff's motion for a preliminary injunction is denied and there being no other relief sought, this action is terminated and the complaint is dismissed, without prejudice.