ROSE DEVELOPMENTS, INC. *v.* PEARSON
PROPERTIES, INC., and First National Bank of Sharp
County

CA 91-275                                    832 S.W.2d 286

Court of Appeals of Arkansas
En Banc
Opinion delivered June 3, 1992

*C. Dwayne Plumlee*, for appellant.

*Jeffrey E. Hance*, for appellee Pearson Properties, Inc.

*Samuel F. Beller*, for appellee First National Bank of Sharp County.

MELVIN MAYFIELD, Judge. Rose Developments appeals from the order of the circuit court which permanently enjoined the drawing on, or honor of, a letter of credit, pursuant to Ark. Code Ann. § 4-5-114(2)(b) (Repl. 1991), on the finding that appellant had committed fraud.

On December 6, 1988, appellee Pearson contracted with the appellant Rose to provide material and labor in connection with the construction of building "K" in a condominium project known as Solomons Landing Project. The amount of the contract was $458,200.00. In lieu of a performance bond, Pearson delivered an irrevocable letter of credit in the amount of $25,000.00 to secure its performance under the contract. The letter of credit authorized Rose to draw up to $25,000.00 available by "your drafts at sight" accompanied by an authorized statement that Pearson (d/b/a Homes, Inc.) had failed to perform its obligations

as required under the terms and conditions of its construction contract and the original of the letter of credit. Under the terms of the letter of credit, drafts had to be drawn and negotiated no later than July 15, 1989. Subsequently, buildings "E" and "L" were made addendum to the original contract. The only change was an increase in the price.

On July 5, 1989, S. Brooks Grady, Sr., Vice-President of Rose, stated in a letter to First National Bank (Bank) that "Homes, Inc. has been working on our job at Solomons Landing in Maryland since November 1988. We have been very satisfied with their work, and they are presently working on our third building." On July 15, 1989, the letter of credit was extended until January 12, 1990, for the purpose of working on buildings "E" and "L".

On December 4, 1989, the Bank was notified that Homes, Inc., had failed to perform its obligations as required under the terms and conditions of its construction contract and immediate payment of $25,000.00 was requested under the letter of credit.

On December 12, 1989, Pearson filed a petition for a temporary restraining order against Rose and the Bank alleging among other things that the draft was fraudulently presented upon misrepresentations by Rose, and alternatively that "Ark. Code Ann. Section 4-5-114 specifically grants the Court authority to enjoin the honor of a draft or demand based on 'fraud, forgery, or other defect not apparent on the face of the documents.'"

On December 13, 1989, the court granted the petition. Subsequently, the Bank filed an answer admitting its obligation to honor the draft drawn against the letter of credit unless enjoined by the court and tendered a cashier's check for $25,000.00 to the clerk of the court for safekeeping until further orders.

After a hearing, held May 31, 1990, the trial court found Rose had committed fraud which should prevent it from drawing on the letter of credit and permanently enjoined the Bank from honoring the draft and Rose from drawing on the letter of credit.

A letter of credit is a three-party arrangement involving two contracts and the letter of credit: 1) the underlying contract

between the customer and the beneficiary, in this case between Pearson and Rose; 2) the reimbursement agreement between the issuer and the customer, in this case between First National Bank and Pearson; and 3) the letter of credit between the issuer and the beneficiary, in this case between First National Bank and Rose. The significant part of this arrangement is the "independence principle" which states that the bank's obligation to the beneficiary is independent of the beneficiary's performance on the underlying contract. 2 J. White & R. Summers, *Uniform Commercial Code* § 19-2 (3d ed. 1988). "Put another way, the issuer must pay on a proper demand from the beneficiary even though the beneficiary may have breached the underlying contract with the customer." *Id.* at 8. "It is not a contract of guarantee. . . even though the letter fulfills the function of a guarantee." Id. at 9.

■ The letter of credit involved in this case is a standby letter of credit which has been characterized as a "back-up" against customer default on obligations of all kinds. *Id.* § 19-1, at 4. Such letters function somewhat like guarantees because it is the customer's default on the underlying obligation that prompts the beneficiary's draw on the letter. *Id.* at 4. The risk to the issuer is somewhat greater than in a commercial letter of credit in that the commercial letter gives the issuer security in goods whereas the standby letter gives no ready security, and the banker behaves as a surety. *Id.* at 6. The standby letter of credit is somewhat akin to a performance bond in that:

> In place of a performance bond from a true surety, builder (customer) gets his bank (issuer) to write owner (beneficiary) a standby letter of credit. In this letter, issuer engages to pay beneficiary-owner against presentment of two documents: 1) a written demand (typically a sight draft) which calls for payment of the letter's stipulated amount, plus 2) a written statement certifying that customer-builder has failed to perform the agreed construction work.

*Id.* at 4. One difference between the standby letter of credit and the surety contract is that the standby credit beneficiary has different expectations.

> In the surety contract situation, there is no duty to

indemnify the beneficiary until the beneficiary establishes the fact of the obligor's nonperformance. The beneficiary may have to establish that fact in litigation. During the litigation, the surety holds the money and the beneficiary bears most of the cost of delay in performance.

In the standby credit case, however, the beneficiary avoids that litigation burden and receives his money promptly upon presentation of the required documents. It may be that the account party has in fact performed and that the beneficiary's presentation of those documents is not rightful. In that case, the account party may sue the beneficiary in tort, in contract, or in breach of warranty; but during the litigation to determine whether the account party has in fact breached his obligation to perform, the beneficiary, not the account party, holds the money.

J. Dolan, *The Law of Letters of Credit*, at 1-18, 1-19 (2d ed. 1991).

Letters of credit are governed by the "Uniform Commercial Code-Letters of Credit," Ark. Code Ann. § 4-5-101 through 117 (Repl. 1991). Section 4-5-114(1) provides that an issuer must honor a draft which complies with the terms of the relevant credit regardless of whether the goods or documents conform to the underlying contract between the customer and the beneficiary. However, the issuer does not have an absolute duty to honor a draft authorized by the letter of credit. An exception is provided by § 4-5-114(2) which provides that an issuer need not honor the draft if "a required document does not in fact conform to the warranties made on negotiation or transfer of a document of title (§ 4-8-306) or of a certificated security (§ 4-8-306) or is forged or fraudulent or there is fraud in the transaction." Section 4-5-114(2)(b) provides that in all other cases as against its customer an issuer may honor the draft despite notification from the customer of fraud, forgery, or other defect not apparent on the face of the documents but a court of appropriate jurisdiction may enjoin such honor.

On appeal, it is argued that the trial court erred in finding the appellant committed fraud which would prevent it from drawing on the letter of credit. Appellant admits that courts have allowed injunctions for "fraud in the transaction" but argues an injunc-

tion is proper only if there is no bona fide claim to payment, and the wrongdoing of the beneficiary has so vitiated the entire transaction that the legitimate purposes of the independence principle would no longer be served. *See Intraworld Industries, Inc.* v. *Girard Trust Bank*, 336 A.2d 316 (Pa. 1975); *Sztejn* v. *Henry Schroder Banking Corp.*, 31 N.Y.S.2d 631 (1941). Appellant contends that Pearson has established only that there may be a dispute as to some of the "back charges". (Back charges have to do with material and labor that needs or needed to be performed, that Pearson was supposed to be responsible for, but appellant had to take over.)

Appellees agree the only issue on appeal is whether appellant committed fraud which would justify the issuance of the injunction and argue the injunction was proper. Appellee Pearson contends that in December 1989 or January 1990 it received a number of back charges dating as far back as December 1988; that it had never previously received these charges; that appellant, while in possession of documents it claimed were back charges, wrote a letter to obtain an extension of the letter of credit stating it was "very satisfied with the work of Homes, Inc."; and that appellant knowingly misrepresented the facts in order to obtain an extension of the letter of credit.

In support of its argument, appellee Pearson cites *W.O.A. Inc.* v. *City National Bank of Fort Smith, Ark.*, 640 F. Supp. 1157 (W.D. Ark. 1986), and *Shaffer* v. *Brooklyn Park Garden Apartments*, 250 N.W.2d 172 (Minn. 1977). Those cases, however, involved false certification accompanying drafts for payment and have no application here. In *City National Bank* the appellant intentionally misrepresented the state of affairs when, though it had been paid, it presented drafts for payment under a letter of credit. That case relied on *Roman Ceramics Corp.* v. *Peoples National Bank*, 714 F.2d 1207 (3d Cir. 1983), which held that a beneficiary who tenders a draft knowing that its certification of nonpayment by the buyers is false, is guilty of fraud in the transaction. Similarly, *Shaffer* involved a situation where letters of credit guaranteed payment of certain promissory notes. The issuer received documents which appeared to comply with the presentation requirements under the letters of credit; however, the certifications which stated the customers had defaulted on their loans were false.

In the instant case, the certification stated that "Homes, Inc., has failed to perform its obligations as required under the terms and conditions of their construction contract." At trial, Robert Pearson III, Vice-President of Homes, Inc., testified they did not allege that there were forgeries "or anything like that" involved in the demand for payment on the letter of credit. Pearson admitted the letter of credit was to protect appellant in the event Pearson did not pay for labor, materials and other supplies that might be incorporated into the structure; that there were outstanding materialmen's and laborers' liens against the project; and that some of those liens were for materials, labor, and supplies that were the responsibility of Pearson. Pearson testified his allegation of fraud was based on the contention that he had been billed for work outside his contract and that Rose had called upon the letter of credit based upon certain back charges. Pearson said the majority of the back charges were unacceptable, but acknowledged that 10% of the charges were legitimate.

Appellee Bank admits this case does not involve forgery or "other defect not apparent on the face of the documents". John Thornton, Executive Vice-President of the Bank, testified he would not have extended the original letter of credit without Rose's statement that the jobs were being done in a satisfactory manner. Appellee Bank argues that none of the back charges, that predated the extension of the letter of credit, were mentioned in appellant's letter which induced the Bank to extend the letter of credit. And the Bank contends that Rose's fraud can be categorized as both egregious and intentional and that the injunction was a proper statutory remedy.

The narrow question to be decided by this court is whether the evidence will support a finding that there was "fraud in the transaction." Our research has revealed no Arkansas cases containing a definition of "fraud in the transaction" as used in the section of the Uniform Commercial Code that is involved in this case. Some courts have held that fraud in the transaction must be of such an egregious nature as to vitiate the entire underlying transaction so that the legitimate purposes of the independence of the bank's obligation would no longer be served. *See Roman Ceramics Corp.* v. *Peoples National Bank*, 517 F. Supp. 526 (M.D. Pa. 1981), *aff'd*, 714 F.2d 1207 (3d Cir. 1983); *Intraworld, supra*; *Sztejn, supra*. Other cases and writers have

suggested intentional fraud should be sufficient to obtain injunctive relief in letter of credit cases. *See NMC Enterprises, Inc.* v. *Columbia Broadcasting System, Inc.*, 14 U.C.C. Rep. Serv. 1427 (N.Y. Sup. Ct. 1974); 6 W. Hawkland, *Uniform Commercial Code Series*, § 5-114:09 (1984); Edward L. Symons, Jr., *Letters of Credit: Fraud, Good Faith and the Basis for Injunctive Relief*, 54 Tul. L. Rev. 338 (1980). Professor Symons concludes "a proper definition of fraud will necessarily encompass and be limited by the requirement of scienter: that there be an affirmative, knowing misrepresentation of fact or that the beneficiary state a fact not having any idea about its truth or falsity, and in reckless disregard of the truth." *Symons, supra* at 379. It has also been suggested that the lesson to be learned from this section of the Uniform Commercial Code (Ark. Code Ann. § 5-4-114(2) (Repl. 1990), is that a court should seldom enjoin payment under a letter of credit on the theory that there is fraud in the documents or fraud in the underlying transaction. *See* 2 J. White & R. Summers, *Uniform Commercial Code* § 19-7 (Supp. 1991).

From our consideration of the law and the evidence in this case, we think the trial court erred in enjoining payment under the letter of credit. In the first place, we do not believe appellant's general statement "we have been very satisfied with their work" is sufficient for a finding of fraud. At the time this statement was made, appellant had extended Pearson's contract for building "K" to include buildings "E" and "L", and it seems obvious that appellant's statement was truthful or appellant would not have extended the contract. Also, the testimony shows that the total amount of the contract for building "K" was $458,200.00 and that the back charges which pre-date the statement complained of totalled only approximately $1,944.81. We do not believe the existence of back charges in that small amount supports a finding that appellant committed fraud when it said "we have been very satisfied with their work."

As to the argument that appellant's fraud consisted of billing for work that was outside its contract and other disputed back charges, Robert Pearson III testified his allegation of fraud was that the letter of credit was being called upon because appellant said that based upon "these back charges" they were still owed money, but Pearson testified that as far as "these back charges" are concerned "the majority of them are unacceptable." Pearson

testified appellant was claiming a total of $50,000.00 to $60,000.00 in back charges on a project which totaled over $1.2 million. This is simply a contract dispute relating to back charges which may have to be resolved in litigation. However, as explained in *Dolan*, *supra*, in the standby letter of credit case "the beneficiary avoids that litigation burden and receives his money promptly" and during the litigation "the beneficiary, not the account party, holds the money."

When we apply the law to the evidence in this case, we think it was clearly erroneous to find that appellant committed fraud that should prevent it from drawing on the letter of credit; therefore, it was error to grant permanent injunctive relief to appellee Pearson and prevent the Bank from honoring the draft drawn on the letter of credit.

Reversed and remanded for any necessary proceedings consistent with this opinion.

CRACRAFT, C.J., and DANIELSON, J., dissent.